**COMMONWEALTH OF PENNSYLVANIA,**
Appellee

v.

**Desmond SCOTT, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 6, 2009.

Filed Feb. 25, 2009.

Mark Patrick Cichowicz, Philadelphia, for appellant.

Robert F. Petrone, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BENDER, PANELLA and KELLY, JJ.

OPINION BY BENDER, J.:

¶ 1 Desmond Scott appeals the judgment of sentence imposed following his conviction of Escape, 18 Pa.C.S. § 5121, in connection with his failure to return to a Community Correction Center. Scott contends that the evidence adduced at trial was not legally sufficient to sustain his conviction as he was on parole at the time of the events charged and that the record fails to establish otherwise. Upon review, we find no merit in Scott's assertion. Accordingly, we affirm the judgment of sentence.[1]

---

1. During the pendency of this appeal, the Commonwealth filed a Petition for Permission to File Post–Submission Communication Pursuant to Pa.R.A.P. 2501(a). In response, Scott filed a Petition to Strike Appellee's Petition to File Post–Submission Communication for Failure to Comply with Pa.R.A.P. 2501. We hereby grant the Commonwealth's Petition and have considered its communication in preparing this disposition. We deny Scott's Petition to Strike.

¶ 2 The record reveals that Scott was convicted of Burglary and commenced two to four years' incarceration on October 11, 2003. On September 19, 2005, the Department of Corrections transferred Scott from SCI–Chester to serve a period of prerelease custody at Kintock Broad, a Community Correction Center then in operation in Philadelphia. After Scott's placement at Kintock Broad, he received a "Notice of Board Decision" from the Pennsylvania Board of Probation and Parole dated November 21, 2005, that apprised him of the Board's decision to "parole [him] to an approved plan upon condition that there are no misconducts and subject to [enumerated] special conditions." Brief for Appellant, Exhibit "C." Thereafter, Scott remained at Kintock Broad until January 11, 2006, when he left the facility on an approved work pass but failed to return. Although Scott telephoned the director of the facility on the following day to explain his departure and discuss returning, he remained at large until February 6, 2006, when he was arrested on unrelated charges.

¶ 3 Scott's Escape charge came to trial in November 2006. Following waiver of his right to a jury trial, Scott's case proceeded non-jury before the Honorable Joan Brown, who found Scott guilty, imposing a sentence of eighteen to thirty-six months' imprisonment to be served concurrently with the sentence imposed upon his recommitment to a state correctional institution. At trial, the Commonwealth called several witnesses, including Roberta Albany, Field Investigative Custodian of Records for the Department of Correction (DOC). Albany testified concerning, among other things, the "Notice of Board Decision" that Scott received, noting that an inmate in receipt of such correspondence "will be told to go to our State Center and be in front of the Public Hearing Officer and sign the actual Release Order, which will be placed in their records." Hearing Volume 1, 11/16/06, at 24. Albany attested further that she did not have such a release order for Scott. Following Albany's testimony and the closing arguments of counsel, the court found Scott guilty of Escape and later imposed the sentence noted above. Scott filed a Motion for Extraordinary Relief, which the trial court denied. Scott then filed this appeal, raising the following questions for our consideration:

A. Was not the evidence insufficient to prove the defendant guilty beyond a reasonable doubt on escape in that the evidence was insufficient to prove that the defendant was in official detention at the time of the alleged escape?

B. Was not the evidence insufficient to prove the defendant guilty beyond a reasonable doubt of escape in that the evidence was insufficient to prove that the defendant possessed the necessary *mens rea* as to whether he was in official detention at the time of the alleged escape?

Brief for Appellant at 3.

¶ 4 Our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000).

"Evidence will be deemed sufficient to support the verdict when it established each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty," and may sustain its burden by means of wholly circumstantial evidence.

Significantly, "[we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005) (citations omitted). Any doubt about the defendant's guilt is to be resolved by the factfinder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001).

¶ 5 In this case, the trial court convicted Scott of Escape based upon his failure to return to a Community Correction Center after he left the facility on an approved work pass. The provision of the Crimes Code applicable under such circumstances provides as follows:

§ 5121. Escape

(a) Escape.—A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

\* \* \* \*

(e) Definition.—As used in this section the phrase "official detention" means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

18 Pa.C.S. § 5121.

¶ 6 In support of his first question, Scott argues that the evidence adduced failed to establish that he was in "official detention" as defined by section 5121(e), as he was on parole at the time he left Kintock Broad. Scott's argument is based, however, only upon his receipt of the letter described, *supra*, and the apparent presumption that issuance of the letter commenced his release on parole. Brief for Appellant at 13 ("In the instant case, the defendant does not argue that he was ineligible for prerelease at the time he was transferred to the Kintock Group Facility. Rather, the defendant here argues that he was paroled subsequent to this transfer."). Scott argues in the alternative that even assuming he was not yet paroled, the Commonwealth's evidence failed to establish that he remained in official detention as defined by section 5121(e). Brief for Appellant at 14 ("It is incumbent upon the Commonwealth, in proving their case, to present direct evidence that the defendant was not really paroled (if such was the case) upon his receipt of the letter informing that he had been paroled.").

¶ 7 Unfortunately, the authority upon which Scott relies does not establish that his parole commenced before he left Kintock Broad or that the Commonwealth is compelled to disprove his assertion that parole had been granted. In *Commonwealth v. Davis*, a case upon which both parties rely, this Court addressed the claims of a defendant who, like Scott, failed to return to a halfway house after being transferred there as part of a prerelease program. *See Davis*, 852 A.2d 392 (Pa.Super.2004). Also like Scott, the defendant in *Davis* contended that he had been paroled and was therefore no longer subject to "official detention" as defined by the Escape statute, section 5121(e). Accordingly, we considered whether "prerelease," as defined at 37 Pa.Code § 95.111, necessarily constituted "parole."[2] *See id.*

2. The Pennsylvania Code defines "prerelease" as "[a] transfer which can be achieved by

at 396. We concluded that the two are not co-extensive and that a defendant's eligibility for parole may depend upon his completion of a prerelease program, particularly where the conviction from which the defendant seeks parole is a "crime of violence." *See id.* (quoting 61 P.S. § 331.34(a)(3)).[3] *Davis* recognizes as well that a defendant on prerelease is serving a transitional period of confinement during which he remains in "official detention." *See Commonwealth v. Maldonado,* 966 A.2d 1144, 2009 WL 179090 (Pa.Super.), 2009 PA Super 15 ¶ 9 (interpreting *Davis, supra* ).

¶ 8 We acknowledge that Scott's offense of Burglary does not qualify as a "crime of violence" for purposes of determining his eligibility for parole under 61 P.S. § 331.34(a)(3) and that Scott is not thereby required to serve a minimum period in a prerelease program.[4] Nevertheless, the record verifies only that Scott was serving a period of prerelease when he absconded from Kintock Broad, not that he was on parole. Commonwealth witness Roberta Albany, a DOC records custodian, testified

that she was familiar with the letter Scott had received from the Board of Probation and Parole. N.T., Hearing Volume 1, 11/16/06, at 24. She also testified, however, that Scott's parole remained to be confirmed before a DOC public hearing officer who would issue a release order following Scott's agreement to the terms of the probation and that the order would then be included in Scott's DOC file. *Id.* Scott never attended a DOC hearing and no release order ever issued for his parole. *Id.* Accordingly, his "prerelease" status remained unchanged and he continued in "official detention" while at Kintock Broad. As the trial court recognized, Scott was not on parole and, consequently, was properly subject to a charge of Escape upon leaving the Kintock facility. As Scott does not dispute his conduct in leaving the facility without authorization, we find the evidence legally sufficient to sustain his conviction for Escape. Accordingly, we find his first question without merit.

■ ¶ 9 In support of his second question, Scott contends that even if the evidence was otherwise sufficient to establish

inmates of state correctional institutions and regional correctional facilities after qualifying in accordance with the criteria, procedures, and policies set forth in §§ 95.113 and 95.117 (relating to minimum criteria for prerelease transfer; and staff responsibilities). Prerelease transfer permits participation in the following programs: work release; educational/vocational training release; temporary home furlough; and community services." *Davis,* 852 A.2d at 395–96 (quoting 37 Pa. Code § 95.111).

3.  This section limits the authority of the Board of Probation and Parole to grant parole as follows: "In no case shall the board act upon an application of an inmate whose term of imprisonment was commuted from life to life on parole or upon an inmate who was serving a term of imprisonment for a crime of violence or is an inmate serving a sentence under 42 Pa.C.S. § 9712 (relating to sentences for offenses committed with firearms)

unless the inmate has served at least one year in a prerelease center." 61 P.S. § 331.34(a)(3).

4.  The statute defines "crime of violence" as:

    (1) Murder of the third degree, voluntary manslaughter, rape, sexual assault, involuntary deviate sexual intercourse, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), robbery of a motor vehicle, arson as defined in 18 Pa.C.S. § 3301(a) (relating to arson and related offenses), aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) (relating to aggravated assault) or kidnapping.
    (2) An attempt to commit voluntary manslaughter, rape, involuntary deviate sexual intercourse, robbery as defined in 18 Pa. C.S. § 3701(a)(1)(i), (ii) or (iii), aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or kidnapping. 61 P.S. § 331.34(b)(1), (2).

a charge of Escape, it remains insufficient to prove that he left Kintock Broad with the intent to satisfy the requisite *mens rea* for Escape. Brief for Appellant at 15. Scott argues that having received a letter from the Parole Board informing him of its decision to grant parole, he did not believe himself to be in "official detention" and intended only to leave in accordance with the terms of his parole. Upon review of the evidence, we find it facially inconsistent with Scott's claims and more than sufficient to establish his intent to escape from official detention.

¶ 10 Significantly, the Escape statute itself fails to specify the level of *scienter* necessary to sustain a conviction. Consequently, we apply the default standard specified by 18 Pa.C.S. § 302, which provides in relevant part as follows:

§ 302. **General requirements of culpability**

\* \* \* \*

**(c) Culpability required unless otherwise provided.**—When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto.

18 Pa.C.S. § 302(c). Section 302 also defines the applicable degrees of culpability:

**(b) Kinds of culpability defined.**—

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

*Id.,* § 302(b). We find the evidence in this case sufficient to establish, at least, that Scott acted recklessly in failing to return to Kintock Broad after completing his approved work release.

¶ 11 To demonstrate Scott's intent, the Commonwealth called Paul Taggines, director of the Kintock Group, who served as the director of Kintock Broad at the time of Scott's unauthorized departure. Taggines' testimony establishes that following his departure from the facility, Scott recognized his legal obligation to return but failed to do so. In point of fact, Scott telephoned Taggines on the day after his departure, made excuses for his failure to return, and expressed his desire to come back. N.T. Hearing Volume 1, 11/16/06, at 40. Given this conduct, the only inference available suggests that Scott was conscious of his wrongdoing in departing Kintock

Broad, and acted with full knowledge of his detention status. First seeking to make amends in an effort to avoid censure, Scott now belatedly claims to have been motivated by the letter he received from the Parole Board. We find such conduct more that ample to establish Scott's *mens rea* under section 302, *supra.* Accordingly, we find his second question without merit.

¶ 12 For the foregoing reasons we affirm the judgment of sentence.

¶ 13 Judgment of sentence **AF-FIRMED.**