J-S78032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BARRY LEE BROWN, | : | |
| | : | |
| Appellant | : | No. 818 MDA 2014 |

Appeal from the Judgment of Sentence entered on December 17, 2013
in the Court of Common Pleas of Dauphin County,
Criminal Division, No. CP-22-CR-0002986-2013

BEFORE: GANTMAN, P.J., JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED JANUARY 07, 2015**

Barry Lee Brown ("Brown") appeals from the judgment of sentence entered following his convictions of driving under the influence ("DUI")—general impairment, *see* 75 Pa.C.S.A. § 3802(a)(1); DUI—high rate of alcohol (.10-.16) (first offense), *see id.* § 3802(b); and DUI—controlled substance—Schedule I (first offense), *see id.* § 3802(d)(1)(i) and (3), and maximum speed limits, *see id.* § 3362(a)(1.2). Counsel for Brown, Wendy J.F. Grella, Esquire ("Attorney Grella"), has filed a Petition to Withdraw as Counsel and a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). We grant counsel's Petition to Withdraw and affirm Brown's judgment of sentence.

On March 9, 2013, while working on a speed enforcement detail, Steelton Police Officer Anthony Minium ("Officer Minium") observed a red

Mitsubishi driving 37 miles per hour in an area posted for a maximum speed of 25 miles per hour.[1] Officer Minium notified Steelton Police Officer Keven Martin ("Officer Martin"). The trial court described what next transpired as follows:

> There were several other speeding stops on the road and when the Mitsubishi pulled over[,] it almost struck another police vehicle. Officer Martin testified that he believed the driver[,] whom he identified as [Brown,] was swerving[,] which caused [a] near accident. The vehicle then stopped and[,] as Officer Martin approached, he observed [Brown] pounding on the steering wheel and yelling.
>
> Officer Martin explained [to Brown] why he had stopped the vehicle and [Brown] continued to scream and say he was not speeding. Officer Martin observed that [Brown] had red, glassy eyes, a strong order [*sic*] of alcohol emanating from his body, slurred speech and he did not have shoes on inside the vehicle. [Officer Martin] asked [Brown] for identification, at which point [Brown] searched through the center console, stopped, searched his back pocket and fumbled through his wallet to produce his Pennsylvania driver's license. Officer Martin ran [Brown's] identification and it came back that he had an active capias in Dauphin County. [Officer] Martin called [Steelton Police] Officer Pendleton ["Officer Pendleton"] (also working the speed enforcement detail) for assistance in taking a possible DUI into custody on a capias.
>
> At this point, [Officer] Martin directed [Brown] out of the vehicle and [Brown] continued to yell and did not comply with the directions. Officer Martin opened the door and assisted him out of the vehicle. Brown was swaying from side to side, and Officer Martin questioned him on the swaying and asked him how much he had to drink. [Brown] said he had a knee injury from the 1980s and had some foot issues[,] which were why he was swaying. Because of the reported injuries, Officer Martin did not conduct a field sobriety test; but[,] rather[,] asked him to

---

[1] Officer Minium used an ENRADD device to determine the speed of the Mitsubishi. N.T., 12/17/13, at 7. The ENRADD device is approved for use by the police to determine speed. *Id.*

take a preliminary breath test[,] which [Brown] refused. Ultimately, [Brown] was placed under arrest for the capias and driving under the influence of alcohol or a controlled substance. [Brown's] vehicle was towed, and as part of the [police] department's policy, a search warrant was performed prior to towing to make sure there wasn't anything of value in the car. Officer Martin discovered an empty beer can and a full beer can under the driver's seat.

Officer Martin transported [Brown] to Harrisburg Hospital for chemical testing. [Officer] Martin read the chemical warnings[,] which [Brown] refused to sign. After the refusal, Officer Martin again asked if [Brown] would consent to the blood test. At this point[, Brown] consented and blood was drawn. … The lab results showed that [Brown] had a BAC of .148 (above the legal limit of .08) and had cocaine metabolites[] in his system.

Trial Court Opinion, 4/25/14, at 3-4 (citations to Notes of Testimony omitted).

After a bench trial, the trial court convicted Brown of the above-described offenses. The trial court subsequently sentenced Brown, for his conviction of DUI—general impairment, to 27 hours to six months in jail, and to pay costs and a fine in the amount of $1,000.00, and restitution. The trial court imposed no further sentence for Brown's remaining convictions. The trial court subsequently granted Brown permission to file a post-sentence motion and appeal, *nunc pro tunc*. Brown filed a Post-Sentence Motion challenging the verdict as against the weight of the evidence. The trial court denied Brown's Post-Sentence Motion, after which Brown filed the instant appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

Subsequently, Attorney Grella filed with this Court a Petition to Withdraw as Counsel, and an **Anders** Brief challenging the verdict as against the weight of the evidence. Before addressing the substantive claim raised in the **Anders** Brief, we first must determine whether Attorney Grella has complied with the dictates of **Anders** and its progeny in petitioning to withdraw from representation.

In order for counsel to withdraw from an appeal pursuant to **Anders**, certain requirements must be met, and counsel must

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous….

**Santiago**, 978 A.2d at 361. "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Wimbush**, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted).

Attorney Grella's Petition avers that she has reviewed the record and determined that the appeal is frivolous. Petition to Withdraw, ¶ 11, 13. Additionally, Attorney Grella's Petition states that she notified Brown that she seeks to withdraw from representation, furnished Brown with copies of

her Petition to Withdraw and **Anders** brief, and advised Brown of his right to retain new counsel or proceed *pro se* to raise any points he believes worthy of this Court's attention. **See id.**, ¶ 21.

Our review discloses that Attorney Grella has substantially complied with the dictates of **Anders** and **Santiago**. **See Commonwealth v. O'Malley**, 957 A.2d 1265, 1267 (Pa. Super. 2008) (holding that substantial compliance with the requirements to withdraw as counsel will satisfy the **Anders** criteria). Accordingly, we next conduct our independent analysis of the record to determine whether the appeal is wholly frivolous.

In the **Anders** brief, Brown claims that the evidence is not sufficient to sustain his convictions. **Anders** Brief at 11. In reviewing a challenge to the sufficiency of the evidence, we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." **Commonwealth v. Bibbs**, 970 A.2d 440, 445 (Pa. Super. 2009) (citation omitted).

> Evidence will be deemed sufficient to support the verdict when it established each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, [we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed.

**Id.** (citation and quotation marks omitted). "Any doubt about the defendant's guilt is to be resolved by the factfinder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be

J-S78032-14

drawn from the combined circumstances." ***Commonwealth v. Scott***, 967 A.2d 995, 998 (Pa. Super. 2009).

Brown was convicted of violating Motor Vehicle Code sections 3802 and 3362. Section 3802 provides, in relevant part, as follows:

**(a) General impairment.**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

…

**(b) High rate of alcohol.** --An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

…

**(d) Controlled substances.** --An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act[.]

…

(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

- 6 -

75 Pa.C.S.A. § 3802.  Section 3362 provides as follows:

> **(a) General rule.** --Except when a special hazard exists that requires lower speed for compliance with section 3361 (relating to driving vehicle at safe speed), the limits specified in this section or established under this subchapter shall be maximum lawful speeds and no person shall drive a vehicle at a speed in excess of the following maximum limits:
>
> …
>
> > (1.2) 25 miles per hour in a residence district if the highway:
> >
> > …
> > > (ii) is functionally classified by the department as a local highway.

75 Pa.C.S.A. § 3362.

Here, the Commonwealth presented evidence that, using an approved ENRADD device, Officer Minium determined that Brown was driving 37 miles per hour, in a zone marked for 25 m.p.h.  N.T., 12/17/13, at 6, 7.  Officer Martin testified that he attended four training sessions, conducted by the Pennsylvania DUI Association, on driving under the influence.  *Id.* at 14. Officer Martin stated that, with his lights and siren activated, he drove his vehicle behind the vehicle driven by Brown.  *Id.* at 15.  Brown immediately drove his vehicle to the right, almost striking a police vehicle parked on the side of the road.  *Id.*  According to Officer Martin, Brown's eyes were red and glassy.  *Id.* at 17.  Further, Officer Martin observed that Brown emanated a strong odor of alcoholic beverages, his speech was slurred, and Brown was not wearing shoes.  *Id.*  Officer Martin testified that upon exiting

the vehicle, Brown swayed from side to side. *Id.* at 18. Although Brown refused a preliminary breathalyzer test, he subsequently consented to a blood test. *Id.* at 22. The blood test revealed that Brown had a blood alcohol content of .148 percent, and "he also had another cocaine metabolite, ecgonine methyl ester; that was 200 nanograms per milliliter."[2] *Id.* at 24.

The evidence set forth above, viewed in a light most favorable to the Commonwealth, was sufficient to sustain each of Brown's convictions. Further, our independent review discloses no non-frivolous issues that could be raised by Brown on appeal. Accordingly, we grant counsel's Petition to Withdraw, and affirm Brown's judgment of sentence.

Petition to Withdraw granted; judgment of sentence affirmed.

---

[2] At trial, Brown proffered the following defense:

> [Brown]: When I turned down Front Street, when I turned, I seen [*sic*] two police cars about 500 feet. They had some people pulled over, and they had their lights on. So I rode on by them.
>
> If I [had] seen two police cars with their lights on, I wouldn't even be speedin[g] by no police cars.
>
> I wasn't speedin[g] anyway because I know how Steelton police are, [be]cause I ... drove Meals on Wheels there for eight years, goin[g] from Steelton, and … I see cops on—they be [*sic*] everywhere. So it wouldn't make no difference for me to be speedin[g] in Steelton.

N.T., 12/17/13, at 32-33. Brown did not challenge the results of his blood test, or argue that he was not under the influence at the time he was stopped by police. *See id.* at 35-36 (wherein Brown admits that his blood alcohol content was .148 percent, and that he had cocaine in his blood).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/2015