J-S53022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| VICTOR DELOATCH | : | |
| | : | |
| Appellant | : | No. 69 MDA 2015 |

Appeal from the Judgment of Sentence of September 9, 2013
in the Court of Common Pleas of York County,
Criminal Division, No. CP-67-CR-0000532-2012

BEFORE:  DONOHUE, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED DECEMBER 30, 2015**

Victor Deloatch ("Deloatch") appeals from the judgment of sentence entered following his convictions of criminal conspiracy (forgery) and criminal attempt (acquisition or obtaining of possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge).[1] We reverse and remand for resentencing.

The trial court aptly summarized the relevant history underlying the instant appeal as follows:

> On August 23, 2011, [Deloatch] acted as the getaway driver for an accomplice[, Nikia McDonald ("McDonald"),] who attempted to pass a false prescription for oxycodone.  Officer John Hanuska ["Officer Hanuska"] of the West Manchester Township Police [D]epartment ultimately filed criminal charges against [Deloatch].  A jury trial was held from June 13 to June 15, 2012.  The jury found [Deloatch] guilty of Count 1:  Criminal Conspiracy to Commit Forgery and Count 2:  Criminal Attempt to

---

[1] ***See*** 18 Pa.C.S.A. §§ 903, 4101(a)(2), 901; 35 Pa.C.S.A. § 780-113(a)(12).

Acquire or [Obtain] Possess[ion of] a Controlled Substance by Misrepresentation[, Fraud, Forgery, Deception or Subterfuge]. On September 9, 2013, the [trial c]ourt sentenced [Deloatch] [o]n Count 2 [to] 5 to 10 years in the State Correctional Institut[ion; and [o]n Count 1 [to] 5 years [of] probation. The sentence [o]n Count 1 was to run consecutively to the sentence [o]n Count 2.

Trial Court Opinion, 3/10/15, at 1-2 (footnotes omitted). Deloatch filed post-sentence Motions, which, after a hearing, the trial court denied. Deloatch did not immediately file a direct appeal of his judgment of sentence. Ultimately, on December 23, 2014, the trial court granted Deloatch permission to file a direct appeal, *nunc pro tunc*. On January 2, 2015, Deloatch filed his *nunc pro tunc* Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Deloatch now presents the following claims for our review:

1. Whether the Commonwealth's evidence at trial was sufficient to support the jury's verdict[,] finding [Deloatch] guilty of Criminal Conspiracy to commit Forgery and Criminal Attempt to Acquire or Obtain Possession of a Controlled Substance by Misrepresentation, Fraud, Forgery, Deception or Subterfuge? Specifically, whether the Commonwealth's evidence at trial was sufficient to establish that [Deloatch] acted as an accomplice or as a co-conspirator to the principal, without any evidence that [Deloatch] entered into a firm agreement with the principal to acquire controlled substances with a fraudulent script, nor was aware of the principal's *mens rea* prior to the principal's attempt to acquire controlled substances with a fraudulent script?

2. Whether the trial court erred in denying [Deloatch's] Post-Sentence Motion challenging the sufficiency of the Commonwealth's evidence to support the jury's verdict?

3. Whether the trial court erred in imposing separate sentences for the two inchoate offenses, Criminal Conspiracy to [C]omit Forgery and Criminal Attempt to Acquire or Obtain Possession

- 2 -

of a Controlled Substance by Misrepresentation, Fraud, Forgery, Deception or Subterfuge, in violation of Section 906 of the Crimes Code?

Brief for Appellant at 4.

Deloatch's first two claims challenge the sufficiency of the evidence underlying his convictions. Regarding his forgery conviction, Deloatch claims that the Commonwealth presented no evidence that he was aware of McDonald's criminal intent, or that the two had entered into an agreement to attempt to "utter a fraudulent script[.]" *Id.* at 8. Further, Deloatch argues that

> [n]o evidence was presented that [he had] entered into any agreement, express or implied, to drive [] McDonald to the Target pharmacy in order to pass a fraudulent script for [o]xycodone. No evidence was presented that [Deloatch] was even aware of [] McDonald's plan to use a fake name to pass a fake script inside the store.

*Id.* at 14. Although police recovered another forged prescription for oxycodone from Deloatch's vehicle, Deloatch contends that there was no testimony regarding the prescription's precise location in the vehicle. *Id.* at 12. Further, Deloatch asserts, the Commonwealth presented no evidence that he had participated in McDonald's "charade" at the pharmacy counter or concealed his identity while he waited in his truck for McDonald. *Id.* According to Deloatch,

> the Commonwealth's evidence demonstrated that he was only a driver. He did not enter the store or otherwise engage with anyone inside or outside the Target store. His name or handwriting did not appear on any of the fictitious scripts found, somewhere, inside the pickup truck. He did not flee the scene or

- 3 -

otherwise attempt to evade the police. When asked, he provided a written statement of his account that evening.

*Id.* at 17-18.

In reviewing a challenge to the sufficiency of the evidence, we evaluate the record "in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." ***Commonwealth v. Bibbs***, 970 A.2d 440, 445 (Pa. Super. 2009) (citation omitted).

> Evidence will be deemed sufficient to support the verdict when it established each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence.[2] Significantly, [we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed.

*Id.* (citation and quotation marks omitted, footnote added). "Any doubt about the defendant's guilt is to be resolved by the factfinder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Commonwealth v. Scott***, 967 A.2d 995, 998 (Pa. Super. 2009).

"To sustain a criminal conspiracy conviction, the Commonwealth must establish that a defendant entered into an agreement to commit or aid in an unlawful act with another person or persons, with a shared criminal intent,

---

[2] "[C]ircumstantial evidence is reviewed by the same standard as direct evidence—a decision by the trial court will be affirmed so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." ***Commonwealth v. Bricker***, 882 A.2d 1008, 1014 (Pa. Super. 2005) (internal quotation marks and citation omitted).

and an overt act was done in the conspiracy's furtherance." ***Commonwealth v. Sanchez***, 82 A.3d 943, 973 (Pa. 2013) (citing 18 Pa.C.S.A. § 903, and ***Commonwealth v. Weimer***, 977 A.2d 1103, 1105-06 (Pa. 2009)).

> The overt act need not accomplish the crime—it need only be in furtherance thereof. … In most cases of conspiracy, it is difficult to prove an explicit or formal agreement; hence, the agreement is generally established via circumstantial evidence, such as by the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators.

***Sanchez***, 82 A.3d at 973 (internal quotation marks and citations omitted).

Deloatch was convicted of conspiracy to commit the crime of forgery. A person commits the crime of forgery if,

> **(a)** … with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:
>
> * * *
>
> **(2)** makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed[.]

18 Pa.C.S.A. § 4101(a)(2).

Regarding Deloatch's criminal attempt conviction, we observe that "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." ***Id.*** § 901. Deloatch was convicted of an attempted violation of 35 P.S. § 780-113(a)(12), which prohibits "[t]he acquisition or obtaining of

possession of a controlled substance by … forgery …."  35 P.S. § 780-113(a)(12).

Finally, we are cognizant that Deloatch was convicted of criminal attempt in his role as McDonald's accomplice.  "An individual is an accomplice if, with intent to promote or facilitate the commission of the offense, he solicits, aids, agrees, or attempts to aid another person in planning or committing the offense." ***Commonwealth v. Treiber***, 121 A.2d 435, 459 (Pa. 2015) (citing 18 Pa.C.S.A. § 306(c)(1)).

Our review of the record, in a light most favorable to the Commonwealth as verdict winner, discloses evidence sufficient to sustain Deloatch's convictions.  At trial, Deloatch did not dispute that McDonald presented a forged prescription at Target. ***See*** N.T., 6/15/12, at 93-94 (where, in opening statements, the prosecutor explains the parties' agreement that the prescription at issue was forged).  Brian Wrightson ("Wrightson"), a pharmacist at the Target pharmacy in West York, Pennsylvania, testified that on August 23, 2011, at about 6:30 p.m., he notified police about a telephone inquiry as to whether the pharmacy had, in stock, 30 mg. oxycodone tablets. ***Id.*** at 102.  According to Wrightson's testimony,

> [a]t a little after 7 [p.m.], a guest reported to the pharmacy with a prescription for [o]xycodone from the State of Maryland.  The guest informed one of my technicians that she was from the State of Maryland.  When I saw this, red flags kind of went off.  We're in York, a prescription is written for an acute pain medicine from the State of Maryland, and we're in York.  So[,] I

- 6 -

informed her that I would have to call and verify that this is real, and she said, go ahead, I need it, I'm up visiting.

So I called the hospital that was on the prescription, and I was transferred to the emergency department. The emergency department stated that they did not have a patient by the name of Keyona Lyde, which was the name on the prescription.[3]

\* \* \*

[The guest, McDonald,] was going in and out of the store. When I said that I was going to call and verify it, she left the pharmacy, at which point, oftentimes with fake scripts[,] they leave and don't come back, but she continued to come back and check the progress and status of the prescriptions.

*Id.* at 102-03, 107 (footnote added). The record reflects that after discovering that the prescription was invalid, Wrightson telephoned 911. *Id.* at 113. Wrightson explained that, as he described McDonald during the 911 call, McDonald left the store for the final time. *Id.*

At trial, Wrightson authenticated a store surveillance video from the date and time in question. *Id.* at 106 (Exhibit No. 2). The surveillance video, which depicted the exterior and interior of the Target store, was played for the jury. *Id.* Of particular note, the surveillance video depicted the following events:

**7:09:05 p.m. —** McDonald enters the Target store.

**7:25:20 p.m. —** McDonald exits Target store.

---

[3] The parties stipulated that "if Dr. Edana Mann would come in to testify, she would state that the signature on that prescription was not her signature and that she had no patient by the name of Keyona Lyde." N.T., 6/15/12, at 105.

- 7 -

**7:35:05-07 p.m. —** McDonald closes the passenger door to Deloatch's vehicle and stands beside the door.

**7:35:07-7:35:15 p.m. —** McDonald walks behind Deloatch's vehicle. As she does so, the truck's backing lights engage. As McDonald walks behind the vehicle and toward Target, Deloatch backs his vehicle out of the parking space.

**7:35:16-7:36:02 p.m.    —** McDonald is visible walking across the parking lot toward the Target entrance. As she approaches the doors to Target, Deloatch's vehicle is visible driving very slowly in the left (oncoming traffic) lane. (The left traffic lane is the lane closest to Target's entrance doors.) As McDonald walks through the first set of entrance doors, Deloatch's vehicle stops for two seconds, then slowly pulls up alongside the entrance doors. The brake lights to Deloatch's vehicle remain lit.

**7:36:49 p.m. —** The brake lights on Deloatch's vehicle disengage briefly, then re-engage.

**7:38:37 p.m. —** McDonald is visible exiting the Target store and walking to Deloatch's truck.

**7:38:41–7:38:48 p.m. —** The surveillance video focuses on the vehicle's license plate.

**7:38:48 p.m. —** The passenger door to Deloatch's vehicle closes and the truck's brake lights disengage.

**7:38:49 p.m. —** The truck is visible pulling away from the Target entrance.

Commonwealth's Exhibit No. 2.

Pennsylvania State Trooper Ryan Wildermuth ("Trooper Wildermuth") testified that just prior to 8:00 p.m. that same evening, he received a bulletin describing a vehicle involved in a possible prescription fraud. N.T., 6/15/12, at 125-26. Trooper Wildermuth stated that the vehicle was a white

Ford F150 truck, with a registration number of 2A14764.[4] *Id.* at 125. Upon stopping the vehicle, Trooper Wildermuth took McDonald and Deloatch into custody, and had the vehicle towed. *Id.* at 126-28.

Officer Hanuska testified at trial that, while executing a search warrant on Deloatch's truck, he discovered another forged prescription:

> I see a prescription laying there, a prescription paper laying there in the truck, and I immediately noticed at the top the name was John Doe. I went in and as I started to review it further, I realized that this, in my belief, was a prescription that was forged in order to practice for doing the real thing at some point.
>
> And then[,] as I flipped it over and began to review it even further, I started to recognize not only the prescription that was passed to [] Wrightson, but the names and the drugs and the quantities and the dosages were all very similar to the … fraudulent prescription that was passed at the Target store.

*Id.* at 141. Officer Hanuska observed that the name of the doctor on the prescription tendered at Target, Edana Mann, also was handwritten on the back of the forged prescription found in Deloatch's truck. *Id.* at 142. Further, the name "Keyona," which was written on the forged prescription tendered by McDonald, also was handwritten on the prescription found in the truck. *Id.* at 144.

In addition, Officer Hanuska testified that Deloatch offered two versions of the incident. *Id.* at 136. According to Officer Hanuska, Deloatch first claimed that, at McDonald's request, he drove McDonald and another

---

[4] The license plate matches the plate seen on the surveillance DVD. N.T., 6/15/12, Commonwealth Exhibit No. 2 (7:38:41 – 7:38:41 p.m.).

female to Target. *Id.* Subsequently, Deloatch admitted to police that there was no other woman present during the incident. *Id.* at 138.

Deloatch testified on his own behalf at trial. Deloatch explained that after he had completed a moving job in York, McDonald requested a ride back to Maryland. *Id.*at 172-74. According to Deloatch, McDonald asked him to stop at "the store" on the way home. *Id.* at 175. Deloatch indicated that while McDonald went into Target, he remained in his vehicle so that he could smoke a cigarette. *Id.* Deloatch testified that McDonald returned to Deloatch's truck, stating that she had to wait for her "stuff." *Id.* at 176. However, Deloatch explained, McDonald never identified the "stuff" for which she was waiting. *Id.*

Deloatch further testified that when McDonald exited the vehicle, he drove to Target's entrance:

> As you all can see, [McDonald is] kind of heavyset, breathing, all these things, so she said, can you pull up to the door so I don't have to walk all the way back to the end of the parking lot. So she walked up, I parked up, and just waited.

*Id.*

This evidence, when viewed in a light most favorable to the Commonwealth, is sufficient to establish that Deloatch conspired with McDonald to forge a prescription for a controlled substance. Police found, in Deloatch's vehicle, another forged prescription slip, substantially similar to the one presented by McDonald at Target. Further, Deloatch drove McDonald to Target, waited for McDonald in his vehicle while McDonald

presented the forged prescription at Target, and placed his vehicle so as to allow a fast getaway.[5]  Contrary to Deloatch's assertions, the circumstantial evidence demonstrated more than Deloatch's mere presence at the scene.

Further, the evidence is sufficient to establish that Deloatch and McDonald, with shared criminal intent, attempted to obtain or possess oxycodone by forgery.  Deloatch facilitated the presentation of the forged prescription by driving McDonald to Target, waiting in his vehicle for McDonald, and parking so as to allow a fast getaway.  Although Deloatch offered a different explanation for parking in front of Target, the jury, as factfinder, was free to believe all, part or none of his testimony.  **See Commonwealth v. Martin**, 101 A.3d 706, 718 (Pa. 2014) (stating that the factfinder is free to believe all, part or none of the testimony presented). Finally, when questioned, Deloatch initially lied about the presence of a third person during the incident.  **See Commonwealth v. Wagaman**, 627 A.2d 735, 739 (Pa. Super. 1993) (recognizing that offering a false explanation can be evidence of guilt).  Because the evidence is sufficient to sustain Deloatch's convictions, we cannot grant him relief on his first two claims. **See Sanchez**, 82 A.3d at 973; **see also Commonwealth v. Bibbs**, 970 A.2d 440, 445 (Pa. Super. 2009) (stating that the Commonwealth need not

---

[5] Further, the jury was able to view surveillance video showing that, despite Deloatch's stated concern for McDonald's physical condition, Deloatch did not drive McDonald back to the Target store.  Rather, he slowly followed McDonald to Target's entrance.  N.T., 6/15/12, Commonwealth Exhibit No. 2 (7:35:50- 7:35:58 p.m.).

establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence).

In his final claim, Deloatch challenges the legality of his sentences. Specifically, Deloatch claims that the trial court erred when it "imposed separate consecutive sentences for two inchoate offenses[,] in violation of Section 906 of the Pennsylvania Crimes Code." Brief for Appellant at 22; *see also Commonwealth v. Ford*, 461 A.2d 1281, 1288-89 (Pa. Super. 1983) (recognizing that a claim that a sentence violated section 906 of the Crimes Code implicates the legality of the sentence). As Deloatch's claim poses a question of law, our scope of review is plenary and our standard of review is *de novo*. *Commonwealth v. Wilson*, 67 A.3d 736, 741 (Pa. 2013).

Section 906 of the Crimes Code provides that "[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt … or criminal conspiracy **for conduct designed to commit or to culminate in the commission of the same crime.**" 18 Pa.C.S.A. § 906 (emphasis added). As our Supreme Court has recognized, "inchoate crimes merge only when directed to the commission of the same crime, not merely because they arise out of the same incident." *Commonwealth v. Jacobs*, 39 A.3d 977, 983 (Pa. 2012) (citation omitted).

Here, the crimes underlying Deloatch's inchoate convictions are "forgery" and "the acquisition or obtaining of possession of a controlled substance by … **forgery**." 18 Pa.C.S.A. § 4101; 35 P.S. § 780-113(a)(12)

(emphasis added). As prohibited by 18 Pa.C.S.A. § 906, the conduct underlying Deloatch's conviction for criminal conspiracy (**forgery**) was designed to commit or to culminate in the commission of the same crime: "[t]he acquisition or obtaining of possession of a controlled substance by … **forgery**[.]" 35 P.S. § 780-113(a)(12) (emphasis added). As such, we conclude that the trial court's imposition of separate sentences for Deloatch's convictions of criminal conspiracy and criminal attempt violated section 906 of the Crimes Code, resulting in an illegal sentence. Accordingly, we reverse Deloatch's judgment of sentence and remand for resentencing. *See Commonwealth v. Dobbs,* 682 A.2d 388, 392 (Pa. Super. 1996) (noting that while this Court has the option of amending an illegal sentence directly or remanding it to the trial court for re-sentencing, "[i]f a correction by this [C]ourt may upset the sentencing scheme envisioned by the trial court, the better practice is to remand.").

Judgment of sentence reversed; case remanded for resentencing consistent with this Memorandum; Superior Court jurisdiction relinquished.

Donohue, J., joins the memorandum.

Ott, J., files a concurring and dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2015