J-S85003-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARL BUXTON | : | |
| | : | |
| Appellant | : | No. 1768 WDA 2016 |

Appeal from the Judgment of Sentence July 25, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0015352-2013

BEFORE: BOWES, J., PANELLA, J., and STABILE, J.

MEMORANDUM BY BOWES, J.: FILED MAY 01, 2018

Carl Buxton appeals from the aggregate judgment of sentence of three to six years incarceration followed by five years probation imposed after a jury convicted him of criminal trespass, escape, and flight to avoid apprehension. We affirm.

The trial court offered the following summary of the underlying facts.

On October 24, 2013, deputies from the Allegheny County Sheriff's Office attempted to serve a felony arrest warrant on [Appellant] for drug-related charges. The warrant was issued on August 27, 2013[,] but law enforcement authorities had been unable to locate [Appellant]. On October 24, 2013, deputies obtained information that [Appellant] was residing at a residence located at 243 Dilworth Street in the Mt. Washington section of the City of Pittsburgh. The deputies responded to that address in the effort to locate [Appellant]. All of the deputies were [dressed in plain clothes but were] wearing visible police badges when they responded to the scene.

Upon arriving at the residence, a number of deputies maintained a perimeter around the residence. Lieutenant Jack Kearney, along with other deputies, attempted to make contact with [Appellant] via the front door of the residence. While positioned on the front porch, Lieutenant Kearney was able to observe [Appellant] through a front window of the residence. [Appellant] was sitting on a couch. Lieutenant Kearney knocked on the front door of the residence and Deputy Jared Kulik loudly announced "police with a warrant!" [Appellant] then quickly jumped up from the couch and ran toward the rear of the residence. Deputies made forced entry into the residence. [Appellant] ran to the basement of the residence and was followed by various deputies. [Appellant] then attempted to exit the residence through a basement window. At this point, Deputy Kulik grabbed [Appellant's] leg and yelled to [him] that he was under arrest and that he should stop fleeing. Deputy Kulik had briefly detained [Appellant] by grabbing his leg, however, [Appellant] refused to stop and continued to resist Deputy Kulik's efforts to apprehend him. [Appellant] began kicking and thrashing about. Despite Deputy Kulik's efforts, [Appellant] broke free of Deputy Kulik's grasp and escaped out of the window.

Once outside, [Appellant] continued to crawl under the porch of the residence. As the deputies exited the residence attempting to locate [Appellant], they were confronted by neighbors who advised that [Appellant] had fled into the basement of a nearby residence. The deputies entered that residence and located [Appellant] hiding behind some curtains. [Appellant] was ordered to come out from behind the curtains. He did and was taken into custody. The residents of that address were a 15-year old boy, his mother and his grandmother. They were present in the residence when [Appellant] rushed into it. [Appellant] did not have permission to enter that residence.

Trial Court Opinion, 7/23/17, at 2-3.

Appellant was charged with criminal trespass, escape, flight to avoid apprehension, and resisting arrest. He was convicted of all counts except resisting arrest and sentenced as indicated above. Counsel timely filed a post-sentence motion and was granted leave to withdraw. Substitute counsel was

appointed and filed an amended motion. The trial court denied all requests for relief.

Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents this Court with the following questions.

I. Was the evidence insufficient to support a conviction for flight to avoid apprehension insofar as the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] intended to avoid apprehension, trial or punishment, where [Appellant] knew he had an active warrant for his arrest for a previous charge or conviction?

II. Was the evidence insufficient to support a conviction for escape?

A. Did the Commonwealth fail to prove beyond a reasonable doubt that [Appellant] intentionally, knowingly or recklessly removed himself from official detention, where the evidence did not establish that [Appellant] knew he was fleeing from the police who had an active warrant for his arrest?

B. Did the Commonwealth fail to prove beyond a reasonable doubt that [Appellant] intentionally, knowingly or recklessly removed himself from official detention, where the evidence did not establish that he was placed under official detention before or during the incident?

III. Did the lower court abuse its discretion in imposing an excessive and unreasonable sentence above the aggravated range of the sentencing guidelines where the court relied exclusively on [Appellant's] prior criminal history and the gravity of the offense, which was no more heinous than the "normal" or "typical" case of this sort?

Appellant's brief at 7-8.

We begin with the law applicable to our review of Appellant's challenges to the sufficiency of the evidence to sustain his convictions.

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

Commonwealth v. Williams, 176 A.3d 298, 305-06 (Pa.Super. 2017) (citations and quotation marks omitted).

A person is guilty of flight to avoid apprehension when he "willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment[.]" 18 Pa.C.S. § 5126(a). Further, the person must have been charged with a crime at the time of flight. Commonwealth v. Phillips, 129 A.3d 513, 518 (Pa.Super. 2015).

A person commits the offense of escape if he or she "unlawfully removes himself from official detention[.]" 18 Pa.C.S. § 5121(a). Official detention is defined as "arrest, detention in any facility for custody of persons under

- 4 -

charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes[.]" 18 Pa.C.S. § 5121(e). The Commonwealth must prove that the person acted intentionally, knowingly, or recklessly in removing himself or herself from official detention. Commonwealth v. Scott, 967 A.2d 995, 1000 (Pa.Super. 2009).

Appellant first argues that the evidence offered at trial was insufficient to prove the mens rea elements of either crime. Specifically, he contends that, because there was no evidence that Appellant knew that there was a warrant for his arrest, the Commonwealth failed to show that Appellant intended to avoid apprehension, trial, or punishment. Appellant's brief at 23-24. Similarly, Appellant contends that the escape conviction cannot stand because there was insufficient proof that he knew he was in official detention:

> [Appellant] did not know of the existence of the warrant against him. Whether he ran because he saw a stranger in street clothes peering in the window at him, or when three men in street clothes kicked in the door and entered his friend's house, he did so because he was afraid. Even if he heard the detectives identify themselves as the police, and announce that they had a warrant, he had no reason to believe that the warrant was for him. He was not in his own residence. He also could not be certain whether the plain-clothed strangers were in fact the police, and made a split[-]second decision not to wait to find out.

Id. at 28.

Although the Commonwealth did not have direct evidence of the subjective intent behind Appellant's actions, criminal intent may be proven by circumstantial evidence. Commonwealth v. Sanders, 627 A.2d 183, 186

(Pa.Super. 1993). The Commonwealth presented evidence that members of the Allegheny County Sheriff's Office fugitive squad, in plain clothes but displaying badges, appeared on the porch of the house in which Appellant was present, and one knocked on the front door and announced "police with a warrant." N.T. Trial, 5/5-6/16, at 30, 37, 54, 67. Appellant immediately ran towards the back of the house, then down stairs to the basement. Id. at 57. The officers found Appellant climbing out of a basement window head first. Id. at 69. Detective Kulik "yelled" at Appellant to stop because he was under arrest. Id. at 70. Appellant nonetheless proceeded out of the basement window, into the basement of another residence, and hid behind a curtain under the basement stairs where he ultimately was found and arrested. Id. at 71-72.

Hence, contrary to Appellant's arguments, the evidence viewed in the light most favorable to the Commonwealth established that Appellant was clearly advised more than once that the individuals seeking him were law enforcement officers with a warrant and that Appellant was under arrest. Despite that knowledge, Appellant fled and attempted to elude capture, both before and after Detective Kulik briefly detained him. From these facts, the jury reasonably could conclude that Appellant's flight was motivated by his desire to avoid arrest. Commonwealth v. Hall, 830 A.2d 537, 542 (Pa. 2003) (quoting Commonwealth v. Meredith, 416 A.2d 481, 485 (Pa. 1980))

("Where the intention of the actor is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct.").

Appellant next disputes the Commonwealth's proof that he had escaped from official detention, claiming that there was insufficient evidence to show that he had ever been detained. Appellant's brief at 29-30. Appellant bases his argument on this Court's decision in Commonwealth v. Woody, 939 A.2d 359, 362 (Pa.Super. 2007).

We begin by noting that, for a person to be in official detention for purposes of the escape statute, "[i]t is not necessary that the suspect be physically restricted by bars, handcuffs, or locked doors. Escape encompasses more than the traditional notion of a prisoner scaling a prison wall." Commonwealth v. Stewart, 648 A.2d 797, 798 (Pa.Super. 1994). The determination is based upon the specific circumstances of the case. Woody, supra, at 362.

In Woody, the case relied upon by Appellant, Woody drove away from an officer who followed, in an attempt to initiate a traffic stop. Appellant eventually abandoned his vehicle and fled on foot, while the officer pursued him in the police cruiser, yelling at Woody to stop and get on the ground. Woody was convicted of escape based wholly on his failure to comply with the officer's commands to stop. This Court vacated the conviction, holding that the evidence failed to show that Woody had ever been detained by the officer. Id. at 363.

However, the Commonwealth cites cases in which this Court has reached the opposite conclusion. Commonwealth's brief at 12-14. For example, in Stewart, a uniformed officer in a marked car encountered Stewart, who was driving a vehicle, at a traffic light. The officer drew his weapon and approached Stewart, advising him to put his hands on the dashboard. Instead, Stewart drove away. 648 A.2d at 797. This Court held that the officer's "show of authority was sufficient to place Stewart in official detention," and "Stewart's decision to drive off in his car, despite [the officer's] clear instructions, constituted the crime of escape, a flagrant and unlawful removal from official detention." Stewart, supra, at 798-99.

In Commonwealth v. Colon, 719 A.2d 1099, 1101 (Pa.Super. 1998), this Court considered "whether official detention exists when an individual is informed by a uniformed officer that he has a warrant for his arrest and that the individual is under arrest." This Court held that it did:

> At the point he had been informed the officers had a warrant for his arrest and that he was under arrest, [Colon] was detained by a show of authority whereby he could not reasonably believe that he was free to leave. We find the statements by the officers in which they announced the purpose of their presence were sufficient to alert [Colon] that he was being officially detained. It is the warrant which extends the power of the state over the defendant, beyond the mere assertion he is under arrest, and completes the required element of "official detention" necessary to constitute the crime of escape. The warrant in this case is as compelling to establish requisite control and detention of [Colon] as were the drawn gun and directive to place defendant's hands on the dashboard of his automobile in Stewart. The warrant is the ultimate exercise of due process in obtaining official custody of a person charged with a crime and must be given the highest respect by the citizenry when executed to prevent the use of force

and contempt for the constitutional process. A warrant is always preferred over an extemporaneous arrest, and refusal to accede to service of a warrant and response by fleeing, reasonably should be treated as an escape. . . . Under the circumstances of this case, it is clear that the officers exhibited a show of authority which a jury could reasonably conclude was sufficient to place [Colon] in official detention for law enforcement purposes.

Id. at 1101.

The instant case is more akin to Colon and Stewart than to Woody. Here, as detailed above, the officers were not in uniform. However, they did display badges, and informed Appellant that they had a warrant and he was under arrest. Detective Kulik used physical force to restrain Appellant, but Appellant evaded the arresting officer's grasp. See N.T. Trial, 5/5-6/16, at 70 ("I held onto his pant leg, told him to stop, he is under arrest. He thrashed about, kicked, squirmed, pulling away from my grasp. I had him detained shortly, but threw [sic] his resistance and his efforts to escape, he was able to break free from my grasp."). From this, the Commonwealth established that Appellant was subject to a "show of authority . . . sufficient to place [him] in official detention." Stewart, supra, at 798. We therefore conclude that the evidence was sufficient to sustain Appellant's convictions.

We now turn to his challenge to the discretionary aspects of his sentence. The following law applies to our review.

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the

appellant has invoked our jurisdiction by considering the following four factors:

> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

Commonwealth v. Samuel, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (some citations omitted).

Appellant filed a notice of appeal after preserving his issues by including them in a motion to modify sentence and his Pa.R.A.P. 1925(b) statement. Further, Appellant's brief contains a statement pursuant to Pa.R.A.P. 2119(f), wherein he claims that, the trial court imposed "an excessive and unreasonable sentence above the aggravated range of the sentencing guidelines" by impermissibly relying upon factors "already accounted for in calculating the guideline ranges."[1] Appellant's brief at 20. Appellant further contends that the trial court failed to consider his need for rehabilitation. Id. at 21. Appellant's claims raise substantial questions. See, e.g., Commonwealth v. Simpson, 829 A.2d 334, 338 (Pa.Super. 2003) ("[A]

_____

[1] Appellant presents argument solely as to his sentence for criminal trespass, not as to aggregate sentence or the individual sentences on the other convictions. See Appellant's brief at 34-38. Notably, Appellant received a standard-range sentence for flight, and only a probationary term for escape although the guidelines suggested a minimum term of incarceration of 21 to 27 months. Id. at 33.

claim that the sentence is excessive because the trial court relied on impermissible factors raises a substantial question."); Commonwealth v. Raven, 97 A.3d 1244, 1253 (Pa.Super. 2014) (finding a substantial question was presented by an excessiveness claim combined with allegations that the trial court failed to consider mitigating factors). Nevertheless, we conclude that they entitle him to no relief.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> Where the trial court deviates above the guidelines, this Court may only vacate and remand a case for resentencing if we first conclude that the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable. Although the Sentencing Code does not define the term unreasonable, our Supreme Court has made clear that rejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

Commonwealth v. Bullock, 170 A.3d 1109, 1126 (Pa.Super. 2017) (internal quotation marks and citations omitted).

The trial court reviewed a presentence investigation report ("PSI") prepared for the instant case, as well as a prior PSI prepared in another of Appellant's cases. N.T. Sentencing, 7/25/16, at 2-3. Thus, we presume that

the trial court considered the relevant mitigating factors. Commonwealth v. Boyer, 856 A.2d 149, 154 (Pa.Super. 2004) ("[W]here the sentencing judge had the benefit of a [PSI] report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.").

At the time of sentencing, Appellant had a prior record score of five. The offense gravity score for criminal trespass was three. Accordingly, the sentencing guidelines recommended the following minimum sentences: three months in the mitigated range, six to sixteen months in the standard range, and nineteen months in the aggravated range.

While exercising his right to allocution at the sentencing hearing, Appellant informed the trial court that he wanted "a second chance." N.T. Sentencing, 7/25/16, at 6. The trial court responded as follows.

> You have passed second, third, fourth, fifth chance already, [Appellant]. You have a prior record score of five. You are defiant. You just don't want to comport to your conduct what the law requires.
>
> . . . .
>
> You entered the home of innocent people with police on your tail. You created a huge danger in that community and specifically to the people in that house. The police don't know where you are going, they don't know who these people are, whether they are connected to you or not, whether these people pose a threat to you as they chase you into some stranger's house.
>
> . . . .
>
> It doesn't matter whether you aren't trying to hurt anybody. You created a very serious situation and a dangerous situation for

innocent people, a woman taking groceries into her car with people in the home and in you go.

And then the police don't know whether these people know you or not. How do they know whether somebody might want to protect you or defend you from the police coming in after you?

How do the police know that? They don't know that. That's a situation that you created.

. . . .

You can't justify running into a stranger's home and making those people subject to the dangers that you allegedly were running from. You made them subject to the same danger. You had no right to enter their home to do that.

Criminal trespass in my view is the most serious offense in this case because of the fact[s] surrounding it at the criminal trespass. [Appellant] faces incarceration of not less than two, no more than four years.

That is above the aggravated range of 19 months and it is above the aggravated range because . . . under the facts of this case [Appellant] made innocent people subject to a very dangerous situation in their own home for his own purposes after he fled yet another home, crawled in through a crawl space with police all around him announcing that they were police.

Id. at 6-8.

Although the trial court mentioned Appellant's criminal history, which was reflected in his prior record score, the trial court did not base its deviation from the guidelines solely upon that consideration. Moreover, "[t]rial courts are permitted to use prior conviction history and other factors already included in the guidelines if, they are used to supplement other extraneous sentencing information." Commonwealth v. Shugars, 895 A.2d 1270, 1275 (Pa.Super. 2006) (quoting Simpson, supra) (internal quotation marks and emphasis

omitted). The trial court focused on the specific dangers Appellant created by his criminal trespass in conjunction with the other relevant sentencing factors presented in the PSI report and the information offered by Appellant and his counsel. See, e.g., Commonwealth v. Long, 831 A.2d 737, 751 (Pa.Super. 2003) (holding trial court did not abuse its discretion in considering Long's four-day delay in reporting hit-and-run, as the delay was only one of factors considered in sentencing Long in the aggravated range).

Upon this record, we cannot conclude that "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill[-]will, or arrived at a manifestly unreasonable decision." Commonwealth v. Zirkle, 107 A.3d 127, 132 (Pa.Super. 2014).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2018

- 14 -