**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Derrick DAVIS, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 23, 2004.

Filed June 14, 2004.

Derrick K. Davis, appellant, pro se.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for Com., appellee.

BEFORE: JOYCE, BENDER and KELLY, JJ.

OPINION BY BENDER, J.:

¶ 1 These appeals are from an order dismissing Appellant's PCRA petition without a hearing and an order dismissing Appellant's petition for credit for time served.[1] Appellant raises four issues in the first appeal, and two issues in the second.

¶ 2 The issues raised at 1410 MDA 2003 are: (1) whether counsel was ineffective in inducing and coercing Appellant's guilty plea to an offense to which he was not guilty; (2) whether counsel was ineffective in allowing Appellant to plead guilty to an offense not established at the preliminary hearing; (3) whether the court erred in failing to provide Appellant additional time to prepare a response to counsel's no-merit letter, and (4) whether the court lacked jurisdiction over the subject matter as a matter of law?

¶ 3 The issues raised at 1621 MDA 2003 are: (1) whether Appellant should have received credit for time served on his es-

---

1. Although there are two separate appeals, both appeals derive from Appellant's conviction and sentencing on a charge of escape, therefore, we consolidate the appeals for purposes of our review.

cape charge, and (2) whether Appellant's right to credit for time served was violated when the court dismissed his petition as untimely? We affirm.

¶ 4 On April 7, 2002, Appellant was housed at the Conewago–Wernersville halfway house pursuant to prior convictions for attempted robbery and felony drug possession. Appellant was participating in a work release program and was employed at a Ponderosa steakhouse nearby the halfway house. Appellant returned late on the evening in question and then later left the institution without permission. Appellant was subsequently arrested in July, 2002, in Virginia and returned to Berks County. The criminal complaint filed in the case charged Appellant with escape graded as a misdemeanor two.

¶ 5 A preliminary hearing was subsequently held on August 6, 2002, after which the charge was bound over to court. Following the preliminary hearing, a criminal information was filed on August 30, 2002, charging Appellant with escape graded as a felony three. Appellant was scheduled for trial on December 11, 2002, however, on December 10, 2002, Appellant entered an open plea to escape graded as a felony three and was sentenced to two to seven years' imprisonment. No direct appeal was filed. On April 24, 2003, Appellant filed a *pro se* petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541–46. Counsel was subsequently appointed to represent Appellant in the PCRA proceedings. On July 3, 2003, Appellant filed a motion entitled "Request for Time Credit."

¶ 6 On July 23, 2003, Appellant's appointed counsel filed a *Finley* [2] no-merit letter and a petition to withdraw as counsel asserting that, after a review of the record and the transcripts of Appellant's

case, it was counsel's opinion that Appellant was not eligible for PCRA relief. In response to the filing of counsel's no-merit letter, on July 29, 2003, Appellant filed a motion to stay the proceedings and requested that transcripts from the preliminary hearing, and the guilty plea and sentencing proceedings be forwarded to him to allow him an opportunity to file a response to counsel's no-merit letter. Despite Appellant's attempt to postpone a decision on his PCRA petition pending study and preparation of a response to counsel's no-merit letter, the court dismissed Appellant's PCRA petition without a hearing on August 7, 2003. On September 4, 2003, the court further dismissed Appellant's motion for "Time Credit." Appellant filed timely *pro se* appeals to each of the above orders.

### Appeal at 1410 MDA 2003

■ ¶ 7 Appellant first contends that counsel was ineffective in allowing him to plead guilty to an offense which he did not commit. We disagree. The crime of escape is set forth at 18 Pa.C.S. § 5121 and reads:

§ 5121. Escape

(a) Escape.—A person commits an offense if he unlawfully **removes himself from official detention** or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

. . .

(e) Definition.—As used in this section the phrase **"official detention"** means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other deten-

2. *Commonwealth v. Finley,* 379 Pa.Super. 390, 550 A.2d 213 (1988).

tion for law enforcement purposes; but the phrase **does not include supervision of probation or parole**, or constraint incidental to release on bail.

(Emphasis added.) Although Appellant left the Conewago–Wernersville halfway house without authorization, Appellant contends that he is not guilty of the offense of escape because he was "on parole" at the time of his residency at the halfway house, thus, rendering his residency a condition of his parole and not official detention under the escape statute. Therefore, according to Appellant, leaving the halfway house did not constitute removing himself from "official detention" under the escape statute. Under the definition of official detention contained in the escape statute, if Appellant had been occupying the Conewago Wernersville halfway house as a condition of his parole, it would seem that removing himself from the halfway house might constitute a violation of the conditions of his parole, but would not constitute the offense of escape. As such, Appellant's argument necessitates a closer look at the circumstances of his placement at Conewago–Wernersville halfway house.

¶ 8 According to the guilty plea colloquy, on April 7, 2002, Appellant was:

In official detention at the Conewago Wernersville halfway house.... [Appellant] was in a prerelease program after serving time in SCI Graterford as a result of a felony conviction that resulted from a jury trial on February 6th, 1992, for criminal attempt to commit robbery....

While [Appellant] was in official detention at Conewago Wernersville he had work release at a Ponderosa located in the general area. He was scheduled to return at 8:00. He did not return until 10:50 p.m. He came back to Conewago Wernersville, would not allow himself to be searched as per the rules by Conewa-

go Wernersville worker Robert Pietrack. At 11:45 p.m., he was observed to walk out without authority and without permission.

N.T. Guilty Plea, 12/10/02, at 8–9. Under Pennsylvania law:

"Parole" has been defined as a method of rehabilitation that permits offenders to serve a period of their sentences outside of prison walls, subject to the terms and conditions imposed by the Commonwealth. *Rivenbark v. Pennsylvania Board of Probation and Parole*, 509 Pa. 248, 501 A.2d 1110 (1985). The essence of parole is the offender's release from prison prior to the expiration of his maximum sentence, conditioned upon his compliance with the terms and conditions of parole established by the Board. Wile, *Pennsylvania Law of Probation and Parole* § 1.6 (1993).

*Miller v. Bd. of Probation and Parole*, 837 A.2d 618, 622 (Pa.Cmwlth.2003). Since commitment to a halfway house necessarily requires removal from a prison and allows the prisoner "to serve a period of their sentences outside of prison walls," arguably commitment to a halfway house meets the definition of "parole" quoted above. However, the guilty plea colloquy establishes that Appellant was in a "prerelease program." In the context of the statutory provisions relating to parole the term "prerelease" has been defined at 37 Pa.Code § 95.111 as follows:

A transfer which can be achieved by inmates of state correctional institutions and regional correctional facilities after qualifying in accordance with the criteria, procedures, and policies set forth in §§ 95.113 and 95.117 (relating to minimum criteria for prerelease transfer; and staff responsibilities). Prerelease transfer permits participation in the following programs: work release; educational/vocational training release;

temporary home furlough; and community services.

*Reider v. Commonwealth, Bur. of Correction,* 93 Pa.Cmwlth. 326, 502 A.2d 272, 274 n. 3 (1985). The above definition aside, the term "prerelease" essentially translates into "prior to release" and begs the question, prior to release on what? Given that the provisions for "prerelease programs" are found in the provisions for parole, it logically follows that the term "prerelease program" refers to a program that predates release on parole.[3] This premise is further bolstered by the provisions of 61 P.S. § 331.34(a)(3), which reads in relevant part:

> In no case shall the board act upon an application of an inmate whose term of imprisonment was commuted from life to life on parole or upon an inmate who was serving a term of imprisonment for a crime of violence...unless the inmate has served at least one year in a prerelease center.

This section refers to an application of a prisoner for parole. Thus, it is apparent that if a prisoner is serving a qualifying sentence, *i.e.,* one for a crime of violence, the prisoner must spend at least a year in a "prerelease program" prior to being eligible for parole. As such, this provision supports the conclusion that a prisoner on a prerelease program has not yet been formally paroled from prison and, therefore, remains under official detention as defined in the statute, even if he is housed outside the walls of a state correctional institution.

¶ 9 We note that the above interpretation is also consistent with the opinion expressed on the matter by the Commonwealth Court. In *Meehan v. Bd. Of Probation and Parole,* 808 A.2d 313, 317 (Pa. Cmwlth.2002), the Court stated:

> As Meehan correctly noted in his brief, under Pennsylvania law, a prisoner may not be paroled before serving his minimum sentence. *Krantz v. Pennsylvania Board of Probation and Parole,* 86 Pa.Cmwlth. 38, 483 A.2d 1044 (1984). As a result, pre-release inmates at Keenan House are deemed to be in custody, not at liberty. Thus, if a prerelease inmate leaves Keenan House, he can be convicted of felony or misdemeanor escape under Section 5121 of the Crimes Code, 18 Pa.C.S. § 5121, which will result in the imposition of an additional sentence.
>
> A person commits the offense of escape "if he unlawfully removes himself from *official detention* or fails to return to official detention following temporary leave granted for a specific purpose or limited period." Section 5121(a) of the Crimes Code, 18 Pa.C.S. § 5121(a) (emphasis added). *Official detention* "means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; *but the phrase does not include supervision of probation or parole,* or constraint incidental to release on bail." Section 5121(e) of the Crimes Code, 18 Pa.C.S. § 5121(e) (emphasis added).
>
> Consequently, a parolee in an in-patient treatment program like Keenan House is not deemed to be in official detention, but rather at liberty on parole. *Jackson[ v. Pennsylvania Bd. of Probation and Parole,* 130 Pa.Cmwlth. 527, 568 A.2d 1004 (1990) ]. Therefore, a parolee

---

**3.** We note that although Appellant contests the fact that he was on "prerelease status," he has characterized his status at the time in question as "preparole." Appellant's brief at 4.

cannot be charged with escape for leaving Keenan House. As such, parolees, who are at liberty on parole while at Keenan House, are not similarly situated with pre-release inmates, who are deemed to be in *official detention*, for purposes of credit for time spent at Keenan House.

While this passage from *Meehan* is technically dictum, and is not binding upon this Court in any event, *Yoder v. American Travellers Life Insurance Co.*, 814 A.2d 229 (Pa.Super.2002), we do find the discussion persuasive and we acknowledge the fact that the Commonwealth Court deals with parole matters far more frequently than does the Superior Court. As such, we are inclined to adopt the interpretation set forth in *Meehan*.

¶ 10 To support his argument, Appellant contends that he was ineligible for prerelease under Department of Corrections regulations and/or policy. Thus, Appellant contends, his placement at Conewago–Wernersville halfway house must necessarily be regarded as parole. However, we note that in making this argument, Appellant has pointed to one qualification for prerelease while overlooking another. Appellant cites to a policy statement from the Department of Corrections appended to his brief[4] that indicates in order to be time-eligible for placement in a Community Corrections Center or Contract Facility, one must have completed at least one-half of his minimum sentence, be within one year of completing the minimum sentence, have no outstanding detainers and have served at least nine months in a state institution.

¶ 11 Appellant then argues that he could not have been on prerelease status as he was not within one-year of completing his minimum sentence. However, under the documentation appended to Appellant's brief, this requirement applies only to placement in a Community Corrections Center or Contract Facility. The following provision reads "for all other pre-release programs, the inmate is time-eligible after he/she has completed one-half (1/2) of his/her minimum sentence...." DOC Policy Statement, DC–ADM 805 § 94.3(a)3 (1996). Appellant has not averred that he was in a Community Corrections Center or Contract Facility at Conewago–Wernersville and the guilty plea colloquy establishes that Appellant was housed in a halfway house. We note that Conewago–Wernersville's website[5] indicates that it has both a Community Corrections Center and a halfway house located on their campus. As such, Appellant's argument does not establish that he was on parole while housed at Conewago–Wernersville. Consequently, we conclude that Appellant was not on parole when housed at Conewago–Wernersville halfway house and that his unauthorized departure from that institution constitutes removing himself from official detention.

■ ¶ 12 Appellant next contends that his plea was involuntary in that he was informed that he was pleading to a misdemeanor two when in fact he pled guilty to escape graded as a felony three. Appellant's argument is without merit in that he was put on notice of the proper grading of the offense by the criminal information filed in this matter. Appellant was further informed both through the guilty plea form

4. The form appended to Appellant's brief is Policy Statement DC–ADM 805 "Policy and Procedures for Obtaining Pre-release Transfer." Appellant has appended a 1996 version of this policy Statement. We observe that an updated version is available at the Department of Corrections website, *www.cor.state.pa.us.*

5. http://www.firetree.com/HH_CW.html

and at the guilty plea proceeding that he was charged with escape as a felony three. Statement Accompanying Defendant's Request to Enter a Guilty Plea; N.T. Guilty Plea, at 3–5. Consequently, Appellant cannot plausibly contend that he was misinformed as to the grade of offense to which he pleaded.

¶ 13 In addition to the above argument, Appellant further contends that the court was without authority to accept a plea to the charge graded as a felony three inasmuch as the charge was originally noted as a misdemeanor two on the criminal complaint. Because of this defect, Appellant contends that the charge of escape graded as a felony three was not bound over to the court. We disagree.

¶ 14 Appellant's argument to the effect that the court was without jurisdiction or authority to accept the plea due to the original error attaches too much significance to the preliminary hearing. As we stated in response to a similar argument in *Commonwealth v. Harvin*, 346 Pa.Super. 575, 500 A.2d 98, 100 (1985):

Appellant has misconstrued the function and importance of the preliminary hearing. The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention. *Commonwealth v. Mullen*, 460 Pa. 336, 333 A.2d 755 (1975). Appellant has not at any time alleged that he was unlawfully arrested or detained. The preliminary hearing is not a trial. Its purpose is to determine whether a suffi-

cient case has been made out to hold the accused for prosecution. *Commonwealth v. Smith*, 232 Pa.Super. 546, 334 A.2d 741 (1975). The Commonwealth has the burden, at a preliminary hearing, to establish a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it. *Commonwealth v. Wojdak*, 502 Pa. 359, 466 A.2d 991 (1983), *Commonwealth v. Lynch*, 270 Pa.Super. 554, 411 A.2d 1224 (1979). It is not necessary, of course, that the Commonwealth prove, at the preliminary hearing, the accused's guilt beyond a reasonable doubt. *Commonwealth v. Lodise*, 276 Pa.Super. 484, 419 A.2d 561 (1980). In order to meet its burden at the preliminary hearing, the Commonwealth is required to present evidence with regard to each of the *material elements* of the charge and to establish sufficient probable cause to warrant the belief that the accused committed the offense. *Commonwealth v. Wojdak, supra*.

¶ 15 As in *Harvin*, Appellant has not contended that he was unlawfully arrested or detained or, excepting the argument advanced previously which we have found without merit, that the Commonwealth failed to make out a *prima facie* case of escape. The only distinction was the grading, which, in this case, was dependent upon whether the prisoner was in detention for a felony or a misdemeanor.[6] In *Harvin*, which also dealt with a discrepan-

---

6. The relevant portion of the escape statute reads:

  **(d) Grading. –**
    (1) An offense under this section is a felony of the third degree where:
      (i) the actor was under arrest for or detained on a charge of felony or following conviction of crime;

      (ii) the actor employs force, threat, deadly weapon or other dangerous instrumentality to effect the escape; or
      (iii) a public servant concerned in detention of persons convicted of crime intentionally facilitates or permits an escape from a detention facility.
    (2) Otherwise an offense under this section is a misdemeanor of the second degree.
18 Pa.C.S. § 5121.

cy between the grading of the offense, we stated:

> The prior offenses utilized in grading the crime of retail theft do not constitute a substantive element of the crime. It is not necessary, therefore, that they be established, either at trial or at the preliminary hearing. Such evidence shall be introduced for sentencing purposes only. *Commonwealth v. Coleman,* 289 Pa.Super. 221, 433 A.2d 36 (1981). If the complaint and information contain allegations of two or more prior convictions for retail theft, the defendant is put on notice that, if convicted, he may be sentenced for a felony of the third degree.

*Harvin,* 500 A.2d at 101. In the present case, although the charge was initially listed as a misdemeanor two in the criminal complaint the criminal information charged Appellant with a felony three, as per the terms of the statute. As such, Appellant was put on notice of the correct grading of the offense long before trial and entry of a plea and cannot complain of a lack of notice. Appellant merely complains about the change in the grading of the offense. We see no defect that would prevent the court from accepting Appellant's plea of guilty to escape graded as a felony three.

■ ¶ 16 Appellant next contends that the PCRA court erred in denying his motion to stay the proceedings in order to allow Appellant an opportunity to respond to counsel's *Finley*/no-merit letter. Although we believe that the PCRA court could have accommodated Appellant and allowed him additional time to respond to counsel inasmuch as Appellant's appointed counsel was abandoning Appellant's cause and filing a no-merit letter, we can perceive no prejudice from the court's failure to allow Appellant additional time to respond to counsel's *Finley*/no-merit letter. Appellant, of course, subsequently filed the

present appeal and has been able to fashion several fairly sophisticated and innovative arguments on his own behalf. Had we been convinced that there was merit to any of the arguments raised, we would have granted Appellant the appropriate relief. Since, after review, we have found Appellant's zealous arguments without merit, the ultimate result remains the same and, thus, Appellant cannot be said to have been prejudiced by the court's refusal to allow him additional time to respond to counsel's no-merit letter.

¶ 17 Lastly, Appellant contends that the court was without jurisdiction of the subject matter as a matter of law. In this argument, Appellant merely recycles his argument that he was not guilty of escape as he was on parole at the time he left the halfway house and, thus, could not be guilty of escape. This argument has been previously addressed and requires no additional discussion.

### Appeal at 1621 MDA 2003

■ ¶ 18 In this related appeal, Appellant contends that the court erred in denying him credit for time served toward his escape sentence. The time in question is the time from the date Appellant was arrested in Virginia until sentenced on the escape charge. The court opined that it was without authority to award Appellant credit for time served on the escape charge as he was still serving time on his original charges. We agree.

■■ ¶ 19 We initially note that the court denied Appellant's petition for credit for time served as an untimely post-sentence motion under Pa.R.Crim.P. 720(A). This was error. An attack upon the court's failure to give credit for time served is an attack upon the legality of the sentence and cannot be waived. *Commonwealth v. Beck,* 2004 PA Super 133, 848 A.2d 987. Moreover, *Beck* indicates that a

failure to give credit for time served presentencing may be addressed under the PCRA. Thus, under the circumstances presented here, the trial court should have treated Appellant's petition for credit as an amendment to his earlier filed petition under the PCRA. Consequently, we will address the merits of Appellant's challenge to the court's failure to give credit for time served presentencing.

¶ 20 While in cases involving a multitude of offenses occurring in quick succession determining which sentences a defendant is entitled to credit for presentence detainment becomes more difficult, the general rule regarding the inquiry seems simple enough—a defendant is entitled to credit only once for presentence detainment. *Commonwealth v. Merigris,* 452 Pa.Super. 78, 681 A.2d 194 (1996).

¶ 21 In arguing that he is entitled to credit toward his escape sentence for the presentence detainment, Appellant builds his argument upon the case of *Neely v. Cuyler,* 48 Pa.Cmwlth. 486, 409 A.2d 1194 (1980), in which credit was given to a defendant convicted of escape for time from his arrest on the escape charge to his sentencing on that charge. However, we see a significant difference between the facts of *Neely* and the present case. At the time of significance, 1977, Neely was **on parole** relating to an earlier manslaughter charge when he allegedly committed additional offenses of, *inter alia,* aggravated assault and attempted murder. Neely was arrested on those charges but, while in custody on the aggravated assault and attempted murder charges, Neely escaped prison on September 24, 1977. Neely was taken back into custody the next day and was tried on the aggravated assault and attempted murder charges in January 1978 and on the escape charge in February 1978. Although convicted of aggravated assault[7] prior to escape, sentencing was deferred on the aggravated assault conviction while Neely was immediately sentenced to one to three years' imprisonment on the escape charge. On appeal, the Court concluded that Neely was entitled to receive credit against the sentence imposed on the escape conviction for the time in custody from his re-arrest until his sentencing on the escape charge.

¶ 22 Appellant contends that *Neely* requires the crediting of time served against his escape charge for the period of time from the date he was arrested until sentenced on the escape charge. We disagree. *Neely* is distinguishable from the present case in that at the time of Neely's escape he was on parole and, as such, was not then actively serving a sentence on another charge. Accordingly, Neely was entitled to credit for the time served prior to sentencing against one of his impending sentences, either the aggravated assault conviction or the escape conviction. In Neely's case, that credit was applied to the escape conviction because, although he was convicted of aggravated assault prior to being convicted of escape, Neely was sentenced on the escape conviction prior to imposition of sentence on the aggravated assault charge.

¶ 23 In the discussion above, we have concluded that, although Appellant had been assigned to the Conewago–Wernersville halfway house, Appellant was still actively serving his sentence on the attempted robbery and drug possession charges while housed at that institution. Thus, when he was later arrested after escaping from the halfway house, he was still serving the sentences on the prior attempted robbery and drug possession convictions. Pursuant to *Merigris,* Appellant is not entitled to credit against two sentences for

---

7. Neely was acquitted of attempted murder.

the pre-sentence confinement. In this case, as Appellant was still serving his prior sentences, the time spent in custody from the time of his arrest to the time he was sentenced on the escape charge must be applied to Appellant's prior sentence.

¶ 24 For the above reasons, we affirm the orders entered at both 1410 MDA 2003 and 1621 MDA 2003.

¶ 25 Orders affirmed.