J-S05037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALPHONSO WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 1230 MDA 2019 |

Appeal from the Judgment of Sentence Entered June 21, 2019
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004668-2018

BEFORE: SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED APRIL 17, 2020**

Alphonso Williams ("Williams") appeals from the judgment of sentence

entered following his conviction of escape.[1]  We affirm.

In its Opinion, the trial court summarized the facts underlying the

instant appeal as follows:

> Lester Smith [("Smith")], a shift supervisor at [] Keystone
> Correctional Services [("Keystone")], testified that Keystone is a
> secured facility that serves as "a halfway house and work release
> center."  Residents of Keystone are "getting released from jail and
> they come there on parole, or else they come back….  They're
> brought back from [a] parole violation.  So[,] they stay with us
> until parole sees them, and then they get a home plan and go
> back out."  The doors are locked[,] and the property is surrounded
> by fences with barbed wire.
>
> On June 8, 2018, [Williams], a resident at Keystone, was
> out on a job search.  When he returned to the facility, [] Smith
> was instructed to strip search [Williams] due to a suspected drug
> offense.  During the search, [] Smith found two bags of synthetic

---

[1] **See** 18 Pa.C.S.A. § 5121.

marijuana in [Williams's] underwear. [Williams] was then given a urine test and tested positive for synthetic [marijuana]. The facility director was notified, as was the Pennsylvania State Police. [] Smith testified that [Williams] returned to the housing unit [but], after a formal count of residents was conducted, it was determined that [Williams] was missing. [] Smith was able to view Keystone surveillance footage and observed [Williams] going over the fence with a sheet on top of the barbed wire.

Trial Court Opinion, 10/31/19, at 1-2 (citations omitted; paragraph break added). Williams was apprehended on August 4, 2018.

Following a bench trial, the trial court convicted Williams of escape. The trial court subsequently sentenced Williams to one to three years in prison, plus fines and costs. Thereafter, Williams filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Williams presents the following issue for our review:

Whether the evidence was insufficient to prove [Williams] guilty of escape[,] when the Commonwealth's witness testified that Keystone Correctional Facility houses individuals who are released from jail and paroled[,] and failed to provide evidence to refute that he was on parole status at Keystone Correctional Facility?

Brief for Appellant at 4.

Williams claims that the evidence is insufficient to sustain his conviction of escape. *See id.* at 11. Specifically, Williams argues that the Commonwealth presented no evidence regarding his "resident status" at Keystone. *Id.* According to Williams, the Commonwealth failed to present evidence that he was at Keystone "for one of the reasons delineated for official detention under [18 Pa.C.S.A.] § 5121(e)[,] nor was testimony presented that

- 2 -

he was committed to Keystone under any court order." Brief for Appellant at 11-12. Further, Williams argues that there was no evidence that his status was anything other than a "parolee." *Id.* at 12.

In its Opinion, the trial court addressed Williams's claim and concluded that it lacks merit. *See* Trial Court Opinion, 10/31/19, at 3-7. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis as to Williams's claim. *See id.* We additionally observe the following.

In *Commonwealth v. Davis*, 852 A.2d 392 (Pa. Super. 2004), this Court addressed a similar issue. The defendant in *Davis* claimed that he had been paroled, and was therefore no longer subject to "official detention," as defined by the escape statute. *Id.* at 396. In considering whether the defendant remained in "official detention," this Court opined that "the term 'prerelease' essentially translates into 'prior to release' and begs the question, prior to release on what? Given that the provisions for 'prerelease programs' are found in the provisions for parole, it logically follows that the term 'prerelease program' refers to a program that predates release on parole." *Id.* at 396.

In *Commonwealth v. Scott*, 967 A.2d 995 (Pa. Super. 2009), this Court applied *Davis* in addressing a similar claim. The defendant in *Scott* was on "prerelease." *Id.* at 998. *Id.* However, the defendant was not required to serve a minimum period in the prerelease program. *Id.* at 999.

The defendant argued that the evidence had failed to establish that he was in "official detention," as he was on parole at the time he left the facility. *Id.* at 998. The defendant's argument was based upon his receipt of a letter indicating his parole status, "and the apparent presumption that [the] issuance of the letter commenced his release on parole." *Id.* at 998. The defendant argued, in the alternative, that, even assuming he was not yet paroled, the Commonwealth's evidence failed to establish that he remained in official detention. *Id.* The defendant relied upon *Davis* as supporting this proposition. *See id.*

This Court rejected the defendant's assertions: "Unfortunately, the authority upon which [the defendant] relies does not establish that his parole commenced before he left [the facility,] or that the Commonwealth is compelled to disprove his assertion that parole had been granted." *Id.*

> [T]he record verifies only that [the defendant] was serving a period of prerelease when he absconded from Kintock Broad,[2] not that he was on parole. Commonwealth witness Roberta Albany, a [Department of Corrections ("DOC")] records custodian, testified that she was familiar with the letter [the defendant] had received from the [Pennsylvania] Board of Probation and Parole. She also testified, however, that [the defendant's] parole remained to be confirmed before a DOC public hearing officer[,] who would issue a release order following [the defendant's] agreement to the terms of the probation[,] and that the order would then be included in [the defendant's] DOC file. *Id*. [The defendant] never attended a DOC hearing and no release order [was] ever issued for his parole. *Id*. Accordingly, his "prerelease" status remained unchanged **and he continued in "official**

---

2 Kintock Broad was a Community Correction Center then in operation in Philadelphia. *See id.* at 997.

- 4 -

> **detention"** while at Kintock Broad. As the trial court recognized, [the defendant] was not on parole and, consequently, was properly subject to a charge of [e]scape upon leaving the Kintock facility. As [the defendant] does not dispute his conduct in leaving the facility without authorization, we find the evidence legally sufficient to sustain his conviction for [e]scape….

*Id.* (emphasis added).

Thus, in **Davis** and **Scott**, the use of the term "parole" was not dispositive of the defendant's status for purposes of the escape statute. Rather, the Court looked to whether the defendant was in "confinement" or "official detention." **See Davis**, 852 A.2d at 396; **Scott**, 967 A.2d at 998-99.

Here, the evidence established that Williams was confined in a secure facility. **See** N.T., 6/21/19, at 9 (wherein Smith testified that the facility was a secured facility where the "doors are locked[,] and the property is surrounded by fences with barbed wire"). Further, as defense counsel conceded to the trial court, Williams would need a "home plan … before he [could] be **officially released** out onto the street." N.T., 6/21/19, at 27 (emphasis added). Thus, the evidence established that Williams had not yet been "released" from "official detention." **See id.** Therefore, based upon the analysis set forth in the trial court's Opinion, and our review set forth above, we conclude that the evidence is sufficient to sustain Williams's conviction of escape.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/17/2020

COMMONWEALTH OF PENNSYLVANIA      : IN THE COURT OF COMMON PLEAS
     : DAUPHIN COUNTY, PENNSYLVANIA
     :
     :
vs.      : NO. 4668-CR-2018
     :
ALPHONSO WILLIAMS      :
     :
     :

## MEMORANDUM OPINION

Following a bench trial held on June 21, 2019, Defendant Alphonso Williams was found guilty of Escape. He was sentenced to one (1) to three (3) years of imprisonment, plus fines and costs.[1] Defendant filed a notice of appeal on July 19, 2019, and has raised one issue for consideration: The Commonwealth failed to produce sufficient evidence that Defendant was "committed" to a community corrections facility under 61 Pa.C.S.A. § 5006.

The following evidence was adduced at trial: Lester Smith, a shift supervisor at the Keystone Correctional Services, testified that Keystone is a secured facility that serves as "a halfway house and work release center." Residents of Keystone are "getting released from jail, and they come there on parole, or else they come back.....They're brought back from [a] parole violation. So they stay with us until parole sees them, and then they get a home plan and go back out." The doors are locked and the property is surrounded by fences with barbed wire. [Bench Trial, June 21, 2019, Notes of Testimony, p. 9]. On June 8, 2018, Defendant, a resident at Keystone, was out on a job search. When he returned to the facility, Mr. Smith was instructed to strip search Defendant due to a suspected drug offense. During the search, Mr. Smith found two bags of synthetic marijuana in Defendant's underwear. Defendant was then given a urine test

---

[1] Defendant was also granted time credit of ten (10) months and eighteen (18) days, as reflected in the Amended Sentencing Order filed June 27, 2019.

and tested positive for synthetic. The facility director was notified, as was the Pennsylvania State Police. [N.T., 6-21-19, pp. 9-10]. Mr. Smith testified that Defendant returned to the housing unit and, after a formal count of residents was conducted, it was determined that Defendant was missing. Mr. Smith was able to view Keystone surveillance footage and observed Defendant going over the fence with a sheet on top of the barbed wire. [N.T., 6-21-19, p. 11].

Trooper Lisa Riccardo with the Pennsylvania State Police also testified. On June 8, 2018 she received a dispatch to Keystone for a report of an inmate being in possession of suspected contraband. [N.T., 6-21-19, p. 13]. Trooper Riccardo described Keystone as a secured halfway house and community correctional facility, due to the manner in which it is secured and the policies in place for everyone upon entry into the facility. Upon arriving at Keystone, Trooper Riccardo buzzed the intercom and identified herself. While waiting outside the rear of the facility, she heard loud thuds, observed a door being kicked from the bottom, and saw an inmate wearing a white shirt, jeans, and sneakers doing the kicking. A Keystone employee then directed her inside, and Trooper Riccardo told that person that someone was trying to get out of the door and it should be secured. Trooper Riccardo identified Defendant at trial as the inmate she saw kicking the door. After realizing that Defendant was no longer in the facility, Trooper Riccardo, Mr. Smith, and another Keystone employee reviewed the security cameras and observed Defendant leaving the facility by means of a sheet draped over the barbed-wire fence.[2] He was wearing the same outfit: white shirt, jeans, and sneakers. [N.T., 6-21-19, pp. 13-16]. Once Trooper Riccardo realized that Defendant was no longer in the secured facility and was last seen

---

[2] The video viewed by Trooper Riccardo did not make it into evidence, as Keystone was unable to provide documentation, as they were having difficulties as a result of switching security camera companies. [N.T., 6-21-19, p. 45].

2

heading towards Route 22, she immediately radioed to dispatch to notify units to aid in Defendant's apprehension. Trooper Riccardo testified that Defendant was apprehended on August 4, 2018. [N.T., 6-21-19, p. 17].

Defendant testified on his own behalf. He stated that on the day in question he was residing at Keystone, and described his residence status as being paroled to Keystone, a secured facility, "upon transfer from Harrisburg CCC on Cameron Street." [N.T., 6-21-19, pp. 24-26].

It is well-settled that:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence. However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

*Commonwealth v. Slocum*, 86 A.3d 272, 275–276 (Pa. Super. 2014) (citations omitted).

The applicable provision of the Crimes Code is as follows:

§ 5121. Escape

3

(a) Escape. – A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

\*\*\*\*\*

(e) Definition. – As used in this section the phrase "official detention" means arrest, detention in any facility for custody of persons under the charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

18 Pa.C.S.A. § 5121. The legislature added:

§ 5006. Escape

An individual committed to a community corrections center or a community corrections facility shall be deemed to be in official detention under 18 Pa.C.S. § 5121 (relating to escape).

61 Pa.C.S.A. § 5006.

Section 5006 indicates the legislature's intent to include those parolees who have been committed to a community service center within the term "official detention" pursuant to section 5121(e). Defendant claims he was not actually "committed" to an "official detention" facility but rather, was "paroled" to that address. Defendant argues that he was not under official detention; there was no court order holding him there. The conditions of his parole included a "home plan" before he could be officially released out onto the street. Keystone was his parole address, not where he was serving any additional sentence; therefore, he argues he was not in official detention as he was not committed to Keystone Correctional Service. [N.T., 6-21-19, pp. 26-27]. Conversely, the Commonwealth argues that the testimony reflects that Defendant was in a secured facility; he had to jump a barbed-wire fence to get out. The Commonwealth also asserts that he was still under detention for his robbery conviction; thus, he unlawfully removed himself from that detention as outlined in Section 5006. [N.T., 6-21-19, p. 28].

4

In *Commonwealth v. Maldonado*, 966 A.2d 1144 (Pa. Super. 2009), the defendants were apprehended by their respective parole officers for technical violations of the terms of their parole. They were placed in a private facility owned by Firetree, Ltd., which administered the Pennsylvania Community Alternative to Prison Program (Penn CAPP) via a contract with the Commonwealth. *Id.* at 1145. Upon their admission to Penn CAPP, each defendant signed a form advising them that they were no longer on parole but, instead, in a pre-release status. *Id.* The defendants absconded from the facility and were charged with escape; however, the trial court dismissed the charges on the basis that they were parolees within the meaning of the escape statute. *Id.* at 1146. In vacating the trial court's order, the *Maldonado* Court began its analysis by noting that "placement in Penn CAPP, though not a prison, may subject one to official detention as contemplated in the escape statute." *Id.* The Court reasoned that "detainment in Penn CAPP constrains one's freedom of movement to within the confines of a housing facility such that placement there effects the kind of detention contemplated within the meaning of section 5121." *Id.* at 1147. In addressing the defendants' assertion that they were under supervision of parole when detained and thus precluded from being charged under section 5121, the Court looked to statutory interpretation of "supervision of parole." *Id.* Applying those considerations, the Court held:

> Once a parolee is arrested and detained for failing to report, and acknowledges he is essentially in prerelease status, he is in official detention for purposes of section 5121 just as any other person placed in custody is. As such, he can hold no reasonable expectation that he retains the liberties and freedoms customary to a person operating under "supervision of parole."

*Id.* at 1148.[3] *See Commonwealth v. Wegley*, 574 Pa. 190, 197, 829 A.2d 1148, 1152 (2003) (while Section 5121 exempts general parole supervision from the definition of "official

---

[3] The Court further noted that "such an interpretation is necessary lest an absurdity having no basis in reason, law, or public policy arise. To give recommitted parole violators incentive to attempt a "no-risk" escape from detention

5

detention," our Supreme Court has construed "official detention" broadly to mean the restraint of a detainee's "liberty to come and go as [the detainee] pleases," regardless of the facility in which the detainee was confined); *see also Commonwealth v. Williams*, 153 A.3d 372, 379 (Pa. Super. 2016) (following *Maldonado* and affirming judgment of sentence for escape conviction, where parole violator fled from his supervisor after supervisor escorted parolee from parole violation center to hospital in ambulance). Also addressing "pre-release" status, our Superior Court in *Commonwealth v. Davis*, 852 A.2d 392 (Pa. Super. 2004) affirmed a judgment of sentence under Section 5121 for an inmate who had been removed from prison and housed at Penn CAPP in "pre-release" status at the time he left the facility without permission. There, the Court rejected the defendant's claim that when he was out of prison, he was on parole, and thus eligible for the "supervision of parole" exclusion while at the halfway house. The Court reasoned that "pre-release" translates to "prior to release," finding parole could not have commenced as long as the defendant was in "pre-release" status. *Id.*, 852 A.2d at 396. Because the defendant was receiving credit for jail time while in the halfway house, he was not on parole and his unauthorized departure from the institution constituted removing himself from "official detention." *Id.*

Based on the evidence of record and applicable case law, this Court concludes that the evidence is sufficient to demonstrate that Defendant unlawfully removed himself from official detention for purposes of committing the crime of escape. As stated above, a reading of Section 5006 indicates the legislature's intent to include parolees who have been committed to a

---

centers such as Penn CAPP, centers from which they are told they are not free to leave, needlessly taxes our enforcement resources and places the public at large in danger. We find this potentiality was not what the General Assembly intended when it crafted and enacted the "supervision of probation or parole" exclusion for persons released on parole." *Maldonado, supra* at 1148.

community corrections facility within the meaning of "official detention" pursuant to Section 5121(e). Official detention is not synonymous with incarceration. It is noted that missing from Section 5006 is language limiting the "official detention" definition to encompass only certain types of parolees. The statute makes no differentiation between being committed to a community corrections facility for purposes of a parole address, or being committed to a community corrections facility for purposes of pre-release status or other such similar supervision. The trial testimony revealed that Defendant was certainly not free to come and go as he pleased while at Keystone. The doors are kept locked and under control of facility supervisors, it is surrounded by a fence with barbed wire on top, and there are policies in place for residents of the facility. It would be a stretch to conclude that Defendant's actual parole could have commenced while in the confines of the secure facility at Keystone. Defendant's distinction between being "committed" to a community facility and being "paroled" to a community facility for purposes of "official detention" is not contemplated by Section 5006. As noted in the cited case law, *infra*, our courts have taken a broad view of what constitutes official detention, and Defendant's circumstances fall within the purview of that definition. Viewing the facts in the light most favorable to the Commonwealth, we conclude that the evidence was more than sufficient to satisfy the elements of escape, and Defendant's conviction should be upheld. *Slocum, supra.*

BY THE COURT:

_____
Scott Arthur Evans, Judge


DATED: October 31, 2019

Distribution: 11/1/19 @ 8:10am
Julia Jacobs, Esq., District Attorney's Office   IO
Jacqulyn R. Gagliardi, Esq., Public Defender's Office   IO
Prothonotary, Superior Court of Pennsylvania mail
Chambers of Judge Scott Arthur Evans fil copy

8