J-A29019-21

2022 PA Super 112

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONNIE LEHMAN | : | |
| | : | |
| Appellant | : | No. 601 WDA 2021 |

Appeal from the PCRA Order Entered April 14, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0003380-2018

BEFORE: BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.: **FILED: June 23, 2022**

While residing at a halfway house as a condition of parole, Ronnie Lehman (Lehman) used a controlled substance and overdosed. Although he was "at liberty" on parole[1] at the time, Lehman was charged and convicted under 18 Pa.C.S. § 5123(a.2), which prohibits the possession of a controlled substance by a "prisoner or inmate." After he was sentenced to a prison term of 35 to 90 months on that count and his judgment of sentence was affirmed on direct appeal, Lehman timely filed a petition for post-conviction relief,[2]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 61 Pa.C.S. § 6138(2.3) provides in relevant part that, "[a] parolee is at liberty on parole when the parolee is residing at a community corrections center, community corrections facility or group-based home for purposes of this section." Renewal is a community corrections center.

[2] 42 Pa.C.S. §§ 9541-9546 (Post-Conviction Relief Act (PCRA)).

contending that his trial counsel performed ineffectively in failing to assert that his parolee status precluded conviction. The Court of Common Pleas of Allegheny County (PCRA court) summarily dismissed the petition, finding that the underlying claim lacked legal merit. Because this ruling rests on a misapprehension of the nature of parole, the PCRA court's order denying post-conviction relief cannot stand.

**I.**

In 2018, Lehman was residing in a halfway house called Renewal as a condition of parole. Early one morning, Lehman was discovered at Renewal, unconscious on a bathroom floor. First responders found on his person a hypodermic needle and bags of heroin. Lehman was taken to a hospital where he recovered.

Following his overdose, the Commonwealth charged Lehman with three counts: Providing Contraband to a Confined Person (18 Pa.C.S. § 5123(a)); Possession of a Controlled Substance (35 P.S. § 780-113(a)(16)); and Possession of Drug Paraphernalia (35 P.S. § 780-116(a)(32)). Defense counsel moved to dismiss the three counts pursuant to the Drug Overdose Response Immunity Act, 35 Pa.C.S. § 780-113.7, which shields overdose victims from being prosecuted for certain enumerated offenses, including the latter two counts above.

In response to defense counsel's motion, the Commonwealth *nolle prossed* the controlled substance and paraphernalia charges. The contraband

charge was amended to an alleged violation of 18 Pa.C.S. § 5123(a.2) (possession of contraband by a prisoner or inmate), which is not an enumerated offense under the Act. Lehman was ultimately found guilty of that sole remaining count and was sentenced to a prison term of 35 to 90 months.

On direct appeal, Lehman argued in part that the contraband charge should have been dismissed under the Act. However, we affirmed Lehman's judgment of sentence, holding that the Act did not afford him immunity because the crime of possession of contraband by an inmate was not an enumerated offense. *See Commonwealth v. Lehman*, 231 A.3d 877, 883 (Pa. Super. 2020); *see also Commonwealth v. Lehman*, 238 A.3d 328 (Pa. 2020) (denying petition for allowance of appeal).

In a concurring opinion, two of the three judges on the panel questioned whether it was proper to assume that parolees residing in halfway houses like Renewal were "inmates" or "prisoners" under the contraband statute. *See Commonwealth v. Lehman*, 231 A.3d 877, 884 (Pa. Super. 2020) (Pellegrini, J. concurring, joined by Bender, P.J.E.). However, since Lehman's counsel had not raised the issue, its merits could not be reached. *See id.*

Lehman filed a timely PCRA petition, asserting that his trial counsel performed ineffectively by failing to challenge the sufficiency of the evidence based on his parolee status. That is, Lehman argued that his status as a parolee, if raised, would have precluded the Commonwealth from proving

beyond a reasonable doubt that he was an "inmate" or a "prisoner" under Section 5123(a.2).

The PCRA court issued a notice of intent to dismiss Lehman's petition and an order summarily dismissing the petition was entered. Lehman timely appealed, and in its 1925(a) opinion, the PCRA court reasoned that Lehman's counsel was not ineffective. **See** PCRA Court 1925(a) Opinion, 7/21/2021, at 4. The PCRA court determined that Lehman could qualify as an "inmate" or a "prisoner" because he was committed to Renewal against his will. **See id.**

Lehman now raises one claim in his appellate brief:

Did the [PCRA] court abuse its discretion in denying the PCRA petition, as amended, without a hearing insofar as [Lehman] established the merits of the claim that the evidence was insufficient to sustain a conviction under 18 Pa.C.S. §5123(a.2), insofar as Mr. Lehman was not a "prisoner" or "inmate" at the time he unlawfully possessed a controlled substance; and prior counsel were ineffective for not raising this issue at trial or on appeal?

Appellant's Brief, at 4 (suggested answer omitted).[3]

---

[3] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." **Commonwealth v. Cruz**, 223 A.3d 274, 277 (Pa. Super. 2019) (quoting **Commonwealth v. Weimer**, 167 A.3d 78, 81 (Pa. Super. 2017)). "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." **Commonwealth v. Stansbury**, 219 A.3d 157, 161 (Pa. Super. 2019) (quoting **Commonwealth v. Miner**, 44 A.3d 684, 688 (Pa. Super. 2021)).

**II**.

Lehman's only issue in this appeal is whether the PCRA court erred in dismissing his ineffectiveness claim, which was predicated on counsel's failure to argue that Lehman could not be found guilty under Section 5123(a.2) as a matter of law due to his status as a parolee.

To assert a meritorious ineffectiveness claim, a petitioner must establish by a preponderance of the evidence that there is merit to the underlying legal claim, that there was no reasonable basis for counsel's conduct, and that the petitioner suffered prejudice.  **See generally Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987).  In this context, prejudice is a reasonable likelihood that but for counsel's deficient performance, the petitioner would have had a more favorable verdict.  **See Commonwealth v. Hanible**, 30 A.3d 426, 439 (Pa. 2011).

As to the underlying merit prong (which is the only prong now in dispute), Lehman contends that since he voluntarily resided at Renewal as a parolee and he was free to leave the premises (albeit in violation of parole), he could not qualify as a prisoner or inmate, precluding his conviction.  The Commonwealth responds that a parolee may be treated as an inmate if the parolee has been "committed to" the custody of a halfway house.

To resolve this question of statutory interpretation, we begin by reviewing the plain language of Section 5123(a.2), which provides that "[a] prisoner or inmate commits a felony of the second degree if he unlawfully has

in his possession or under his control any controlled substance in violation of Section 13(a)(16) of The Controlled Substance, Drug, Device and Cosmetic Act." "Inmate" is defined in 18 Pa.C.S. § 5123(e) as "a male or female offender who is *committed to*, under sentence to or confined in a penal or correctional institution." (Emphasis added).

As a community corrections center, Renewal indisputably qualifies as a correctional institution. **See** 61 Pa.C.S. § 5001. The parties also seem to agree that Lehman was not a "prisoner" or "confined" at the time of his overdose. The narrow issue here is whether a parolee may be considered an "inmate" for the purposes of Section 5123(e) by virtue of being "committed to" a halfway house.[4]

The phrase "committed to" is not defined in 18 Pa.C.S. § 5123 or elsewhere in the Criminal Code; it is simply part of the definition of an "inmate." However, as employed in Section 5123 and other relevant statutes

_____

[4] Penal statutes must "be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in [Title 18] and the special purposes of the particular provision involved." 18 Pa.C.S. § 105. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "The plain language of the statute is the best indicator of the legislature's intent. To ascertain the plain meaning, we consider the operative statutory language in context and give words and phrases their common and approved usage." **See Commonwealth v. Chesapeake Energy Corp.**, 247 A.3d 934, 942 (Pa. 2021).

and taken in full context, "committed to" necessarily refers to a class of offenders held or incarcerated in correctional facilities against their will.[5]

It is significant that Pennsylvania courts have long recognized that parolees "are not similarly situated with pre-release inmates" because parolees are "at liberty" rather than in official detention or incarceration. *Meehan v. Pennsylvania Board of Probation and Parole*, 808 A.2d 313, 317 (Pa. Cmwlth. 2002); *see also* 61 Pa.C.S. § 6138(2.3) ("A parolee is at liberty on parole when the parolee is residing at a community corrections center, community corrections facility or group-based home for purposes of this section.").

Accordingly, "*parolees*, who are at liberty on parole while at [a community corrections facility or center]" are a distinct class of offenders from "pre-release *inmates*, who are deemed to be in *official detention*, for purposes of credit for time spent at [a community corrections facility or center]." *Commonwealth v. Davis*, 852 A.2d 392, 397 (Pa. Super. 2004) (citing *Meehan*, 808 A.2d at 317) (emphasis added); *Jackson v. Pennsylvania Board of Probation and Parole*, 568 A.2d 1004 (Pa. Cmwlth. 1990) (same); *see also Cox v. Pennsylvania Board of Probation and*

---

[5] The word, "commit" describes the process of sending a person somewhere without the latter's consent. *See* COMMIT, Black's Law Dictionary (11th ed. 2019) ("To send (a person) to prison or to a mental health facility, esp. by court order.").

*Parole*, 493 A.2d 680 (Pa. Cmwlth. 1985) (same) (seminal case explaining that parolees are generally not entitled to credit time on a sentence while receiving in-patient drug treatment because the restrictions on liberty are not commensurate with incarceration.).[6]

The rules and regulations establishing the parole system further support our conclusion that parolees are not "inmates" who are "committed to" a community corrections center. The Pennsylvania Board of Probation and Parole may place parolees in these centers when they are released from prison as a condition of parole – if they do not agree to go, then they continue serving their prison sentences. Parolees who violate a condition of parole by engaging in prohibited drug use may be sent to these centers for treatment.

_____

[6] Community corrections centers are defined at 61 Pa.C.S. § 5001, which falls under Part III of the Prisons and Parole Code, titled "Inmate Confinement." However, this in no way suggests that the Legislature intended for all offenders housed in those facilities to be classified as inmates. Section 5003(1) provides that to be so housed, an offender must be, *inter alia*, "[a] parolee under the jurisdiction of the board who is in good standing with the board." When originally enacted, a provision in that same chapter stated further that an offender may be housed in a community corrections center or facility if he is an "inmate[] transferred by the department under Chapter 37 (relating to inmate prerelease plans)." 61 Pa.C.S. § 5003(5) (expired July 1, 2013). It can be inferred that the Legislature contemplated an "inmate" as an offender who is sent or "transferred" to a community corrections facility or center by the Department of Corrections, whereas a "parolee" is someone who qualifies for housing due to their good standing with the Parole Board. The definition of "parolee" makes no mention of action on the part of the Parole Board to transfer, send or commit a parolee to a community corrections facility, evidencing the choice of residence exercised by the parolee, whereas an inmate is not given that choice.

Renewal is a community corrections center located in downtown Pittsburgh. As explained in ***Medina v. Pennsylvania Board of Probation and Parole***, 120 A.3d 1116 (Pa. Cmwlth. 2015), and ***Harden v. Pennsylvania Board of Probation and Parole***, 980 A.2d 691, 699 (Pa. Cmwlth. 2009), community corrections centers are operated by private entities under contract with the Pennsylvania Department of Corrections.[7]

As a matter of law, a parolee may only reside at Renewal or any community corrections center pursuant to a parole agreement, which is a contract wherein a parolee accepts conditions, subject to stipulated consequences in the event that those conditions are violated. ***See*** 37 Pa. Code § 65.7 ("The parole agreement shall contain the parole number, date *and signature of the parolee.*") (Emphasis added); ***see also id.*** at § 65.6(2) (providing that "[e]very parolee shall acknowledge . . . [t]hat he fully understands the conditions of his parole and agrees to follow such conditions."). In sum, a parole agreement does not exist unless the parolee has willingly accepted its terms. ***See id.***

_____

[7] 61 Pa. C.S. § 6101 sets forth two types of community based halfway houses. A "Community corrections facility" is a residential facility operated by a private contractor that: (1) provides housing to offenders pursuant to a contract with the department; and (2) is operated in accordance with Chapter 50. A "Community corrections center" is defined as [a] residential program that is supervised and operated by the department [of corrections] in accordance with Chapter 50 (relating to community corrections centers and community corrections facilities.).

Once a parole agreement has been executed, the parolee "shall remain in the legal custody of the [P]arole Board until the expiration of his maximum sentence, or until he is legally discharged." *Id.* at § 63.2. If the parolee violates the agreed-upon terms during the parole period, the Parole Board "may cause his detention or return to a correctional institution." *Id.* at § 63.3.

In this case, Lehman was not, as the PCRA court presumed, residing at Renewal against his will. He was at Renewal pursuant to an agreed-upon parole condition. If Lehman wished, he could have left to serve out the remainder of his sentence in prison. Lehman's option to leave Renewal, his statutory status as a "parolee at liberty on parole," and the absence of his right to accrue credit time against his sentence while staying there, made it impossible for Lehman to qualify as an "inmate" for the purposes of Section 5123.

Had Lehman's trial counsel sought to have the contraband charge dismissed on the ground that he was not an inmate, there is a reasonable likelihood that the argument would have succeeded, resulting in the dismissal of the charge. Accordingly, the PCRA court abused its discretion in dismissing Lehman's ineffectiveness claim.[8]

_____

[8] Assuming that the definition of an inmate or prisoner is ambiguous under 18 Pa.C.S. § 5123(a.2), Lehman would be entitled to relief under the Rule of Lenity. Under that rule, "any ambiguity in a criminal statute will be construed in favor of the defendant. The rule of lenity requires a clear and unequivocal warning in language that people generally would understand, as to what

**III.**

We conclude our analysis by writing separately in response to certain matters raised in the dissent.

The core of the dissent is its disagreement with the majority that Lehman was not "committed to" Renewal because he was there as a voluntary condition of parole. Not accepting Black's Law dictionary of the term, the dissent instead cites definitions of "commit" found in the Merriam-Webster Dictionary. However, these definitions do not, as the dissent contends, demonstrate that there is a voluntary aspect to being "committed to" a correctional institution under Section 5123(a.2). In fact, of the five definitions provided, the one closest in context to the present circumstances is "3b," and its examples of usage (provided below but omitted by the dissent) highlight the involuntary nature of being "committed to" a prison or a community corrections center:

[3]b: to place in a prison or mental institution

// The patient was committed by the court to a mental hospital.

---

actions would expose them to liability for penalties and what the penalties would be." ***Richards v. Pennsylvania Board of Probation and Parole***, 20 A.3d 596, 600 (Pa. Cmwlth. 2011); ***see also Commonwealth v. Simmons***, 262 A.3d 512, 516 (Pa. Super. 2021) (*en banc*) ("Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant."). Thus, we must give Lehman the benefit of any lack of statutory clarity concerning whether he was an "inmate" who was "committed to" a community corrections center at the time of his overdose.

- 11 -

// He was committed to the state penitentiary for 10 years[.] https://www.merriam-webster.com/dictionary/commit (definition 3) (last visited May 18, 2022) (emphasis in original).

Even if there was a whiff of validity in the dissent's interpretation of Section 5123(a.2), the Rule of Lenity would preclude us from adopting it. This fundamental tenet of statutory construction, which the dissent ignores, requires courts to construe ambiguous terms in the way that avoids imposition of a penal sanction. Under the dissent's own analysis of whether Lehman was a parolee or an inmate under Section 5123(a.2), the phrase, "committed to" may be susceptible to multiple meanings, including the one favorable to Lehman. Thus, if there was any ambiguity in these disputed terms, then they would have to be construed in Lehman's favor.

Moreover, the dissent's reliance on **Commonwealth v. Cornelius**, 180 A.3d 1256 (Pa. Super. 2018), is equally unavailing because it involves completely different facts and speaks to points of law that are not now at issue. In **Cornelius**, the defendant was a parolee who was arrested at his home for a parole violation. Authorities later discovered during jail intake that the defendant had contraband hidden on his person. On appeal, the defendant conceded that he "was in fact confined" at a jail, but he argued in relevant part that he was not yet an "inmate" during the intake processing stage. This Court held that the defendant could be found guilty of violating Section

5123(a.2) because upon his arrest and transfer to jail, he qualified as an "inmate" who was "committed to" the custody of a correctional institution:

> It is undisputed that Appellant was arrested for a parole violation, transported, and surrendered to the custody of the staff at the Warren County Jail. Once his intake processing began, Appellant was committed to the custody of the Warren County Jail. ***Accordingly, that is when he <u>first became an inmate</u> of the jail as defined under subsection 5123(e)***.

180 A.3d at 1261 (emphasis added).

The material distinctions between ***Cornelius*** and this case are obvious. The defendant in ***Cornelius*** was *handcuffed* and *arrested* for violating parole and then *taken to a jail against his will*, at which point he was found to have possessed contraband. It was only after being arrested, handcuffed, transported and surrendered to a jail for processing that "he first became an inmate of the jail as defined under subsection 5123(e)." ***Id.*** By clear implication, the defendant was a parolee and not an inmate prior to those events. Here, Lehman went to Renewal *voluntarily as a* condition of parole and as a parolee. ***Cornelius*** would only apply here if Lehman's contraband possession had occurred after a parole violation, an involuntary arrest and a transport to a jail. Here, those are not our facts.

Finally, the dissent questions the import of recent revisions to statutes concerning the rights and legal status of a parolee. The majority cited 61 Pa.C.S. § 6138(2.3) for the proposition that parolees are "at liberty on parole" and not in official detention when serving probation. Although the dissent is correct about the timing of the statute's amendment, it must be noted that

this statute did not come out of the blue; it is a codification of long recognized distinctions between parolees and inmates. *See Meehan*, 808 A.2d at 317. It is also a clarification of statutory provisions already in force at the time of Lehman's arrest which presupposed that, prior to recommitment upon a parole violation, a parolee remained "at liberty on parole." *See e.g.*, 61 Pa.C.S. § 6138(2.1) (effective January 2, 2013 to December 17, 2019).

The legislative intent behind the most recent enactment of Section 6138(2.1) is further evidenced by other revisions to relevant statutes, including 61 Pa.C.S. § 5006 (effective June 30, 2021), which provides that a parolee living in a community corrections center "while in good standing on parole shall not be deemed to be in official detention under 18 Pa.C.S. § 5121." Because this statute definitively precludes parolees today from being treated as inmates under 18 Pa.C.S. § 5123(a.2), the dissent's interpretation would impose criminal liability on Lehman for acts, even under its view, which are no longer criminalized. This approach is not warranted in the instant case because, again, the above-mentioned amendments are merely further recognition of statutes and decisional law which were in force at the time of Lehman's overdose. *See Davis*, 852 A.2d at 397; *Meehan*, 808 A.2d at 317.[9]

_____

[9] The dissent complains that the majority is advancing positions not articulated by Lehman and relying on facts not of record. What that ignores, and as mentioned previously, is that in the direct appeal, two of the three judges on the panel questioned whether it was proper to assume that parolees residing in halfway houses like Renewal were "inmates" or "prisoners" under the

Order vacated.  Case remanded.  Jurisdiction relinquished.

President Judge Emeritus Bender joins the opinion.

Judge Bowes files a dissenting opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/23/2022

---

contraband statute.  Since Lehman's counsel had not raised the issue, its merits could not be reached at that point.  Lehman's PCRA petition arose directly from that concern.  With respect to the record facts, it is undisputed that Lehman was a parolee at all relevant times, that he had a valid parole agreement, and that he agreed to reside at Renewal as a condition of parole. The dissent even notes that Lehman "opted to agree to the conditions of his parole" and that "he voluntarily" resided at Renewal.  Thus, the majority's review in this appeal is limited to the issues presented and facts which are not in dispute.